## JOHNSON v. LEWIS and others.

(*Circuit Court, E. D. Arkansas.* ——, 1881.)

1. TRUST—PARTNERSHIP.

Where a trust is created by deed, which contemplates the purchase of municipal bonds, (the legal title to which is vested in the trustees,) by a fund raised by the sale of certificates payable to bearer, which entitles the holder to participate in the income and in the distribution of the securities by a drawing, in a mode prescribed in the deed, the relation of partners does not exist between the certificate holders.

Whether such a trust is illegal under the English companies act, 1862, *quere.*

2. NEGOTIABLE PAPER—TITLE OF PURCHASER.

The rule that the purchaser of a chattel acquires no better title than his vendor possessed has no application to negotiable paper. The party who takes such paper before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title good against all the world.

In Equity.

*Palmer & Nicholls, Tappan & Hornor,* and *Charles C. Waters,* for plaintiff.

*Eben W. Kimball,* for defendants.

CALDWELL, D. J. The plaintiff was the holder of $10,000 in negotiable bonds issued by the county of Phillips, in this state, which he placed in the hands of W. N. Coler, on the twenty-sixth day of June, 1874, "to be sold at 60 cents, and accounted for at same, less a commission of 2½ per cent." Coler sold the bonds to the Municipal Trust, of London, England, in October, 1874, for 85 cents on the dollar, receiving a part of the price agreed to be paid therefor in cash, and the balance in certificates of the trust. Suit was afterwards brought against the county on the bonds, and judgment recovered thereon in favor of the trust, and the judgment assigned to Lewis. Thereupon the plaintiff filed this bill, in which he seeks to reclaim the bonds and their proceeds upon the alleged ground that Coler had never accounted to him for the bonds, and that he transferred them to the trust for money and certificates of stock in fraud of plaintiff's rights, of which the agents of the trust had full notice.

The trust was constituted by a deed dated the fifteenth day of December, 1873, which was made between certain parties of the first part, styled "the trustees," certain parties of the second part, called "the committee," and certain parties of the third part, called "the covenantees."

The scheme contemplated subscriptions to raise a fund for the purpose of purchasing bonds of municipalities within the United States. The bonds were to be purchased by "the committee" named in the deed, and placed in the possession of the banker of the trust by the trustees. Subscribers to the fund received certificates, payable to the bearer, which entitled the holder to participate in the distribution of the profits and proceeds of the trust investments by a drawing in a mode set out in the deed, which, in some of its features, closely resembled a lottery. The capital of the trust was fixed by the deed at £350,000. The committee of the trust purchased from Coler bonds, including those of Phillips county, valued at £217,550 12s. and 10d., for which he was paid in cash £135,000 12s. and 10d., and the remaining £82,555 was paid him in certificates of the trust, which two witnesses testify were, at the time, par or a little under. The trust was not a corporation or joint-stock company or partnership, but a trust formed by deed of settlement for the purpose of securing investments. The trustees were the legal owners of the trust property, and the business of the trust was managed by them and "the committee" created by the deed for the benefit of the certificate holders, who were strangers to each other, and who entered into no contract between themselves, nor with any trustee on behalf of each other, and were not, therefore, partners.

It is a question whether this trust was not obnoxious to the provisions of the English companies act, 1862, and illegal. According to the opinion of the master of the rolls in *Sykes* v. *Beadon*, Solicitors' Journal, April 12, 1879, p. 464, it was; but in *Smith* v. *Anderson*, reported in London Times, July 17, 1880, the court of appeal overrule *Sykes* v. *Beadon*.

The question is not material in this case, for in any event the certificate holders who contributed the money to purchase

and pay for the securities are in equity entitled to them, and their proceeds, to be distributed among them according to the scheme of the deed, or in some equitable mode.

The evidence shows very clearly that the bonds were purchased from Coler in good faith before their maturity, and without notice of any defect in Coler's title or authority to sell. The only witness whose testimony tends to impeach the plaintiff's title is Coler himself, who testifies that he informed one or two persons, sustaining the relation of agents or managers to the trust, that the bonds were not his property and that he had no authority to use them as he was doing. It is improbable that he made any such statement to any one when he was anxiously seeking to dispose of the bonds; and he is flatly contradicted on all points by the persons to whom he claims he made the statements, and by the members of the committee, who alone had authority to purchase bonds, and who testify they were purchased in good faith. In the written agreement entered into for the sale of the bonds to the trust, he describes himself as "a dealer in American municipal bonds," and as having the possession and control over a large number of such bonds, "which he is duly authorized to sell and dispose of," and it is not reasonable that on the eve of consummating a sale of a million and a quarter of bonds, which he had been working for months to bring about, he would make a voluntary confession of want of authority which would at once put an end to his enterprise. Besides, his conduct in the transaction is not such as to inspire confidence in his honesty or veracity. He received the bonds to sell at 60 cents, for which he was to receive $2\frac{1}{2}$ per cent. commission. He sold them for 85 cents, receiving nearly 60 cents of this sum in cash, and certificates of the trust for the balance, worth at the time par or a little under, and has never paid Johnson, from whom he received the bonds for sale, a single cent. The defendants having purchased the bonds from Coler in good faith are entitled to retain them.

Mr. Story says: "If an agent is entrusted with the disposal of negotiable securities or instruments, and he disposes of them by sale or pledge, or otherwise, contrary to the orders

of his principal, to a *bona fide* holder without notice, the principal cannot reclaim them. The reason is that the principal, in all such cases, holds out the agent as having an unlimited authority to dispose of and sell such instruments as he may please." Story on Agency, § 228.

The common-law rule that the purchaser of a chattel acquires no better title than his vendor passed, has no application to negotiable paper. "The possession of such paper carries the title with it to the holder. 'The possession and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title good against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession." *Murray* v. *Lardner*, 2 Wall. 110; *Hotchkiss* v. *National Bank*, 21 Wall. 354. Tested by these settled rules the plaintiff's case fails.

Injunction dissolved and bill dismissed.