*118
 
 Mr. Justicé SWAYNE
 

 delivered tbe opinion of tbe court.
 

 Tbe question presented by tbe instruction, excepted to is not a new. one, either in commercial jurisprudence or in tbis court. •
 

 Tbe general rule of tbe common law is, that, except by a sale in market overt, no one can give a better title to personal property than be bas bimself. Tbe exemption from •tbis principle of securities, transferable by delivery, -was established at an early period. It is founded upon principles of commercial policy, and is now as firmly fixed as tbe rule to which it is an exception.. It was applied by Lord Holt to a bank bill in Anon, 1st Salkeld, 126. Tbis is tbe earliest reported case upon tbe subject. He held that tbe action must fail “by reason of the.course of trade, which creates a property in tbe assignee or bearer;”
 

 The leading ease upon tbe subject is
 
 Miller
 
 v.
 
 Race
 

 *
 

 decided by Lord Mansfield. - Tbe question, in that case, also related to a bank note. Tbe right of tbe
 
 bond fide
 
 bolder for a valuable consideration was held to be paramount against tbe loser. He put the decision upon tbe grounds of the course of business, tbe interests of trade, and especially that bank notes pass from band to band, in all respects, like coin. The same principle was appliéd by that distinguished judge in
 
 Grant
 
 v.
 
 Vaughan,
 

 †
 

 to a merchant’s draft upon bis banker. He there said: In “
 
 Miller
 
 v.
 
 Race,
 
 81st Geo. II, B. R,., tbe holder of a bank note recovered .against tbe cashier of a bank, though tbe mail bad been robbed of it, and payment bad been stopped, it appearing that he came by it fairly and
 
 bond fide,
 
 and upon a valuable consideration, and'there-is-no distinction between a bank nóte and such a note as this is.” In
 
 Peacock
 
 v.
 
 Rhodes,
 

 ‡
 

 be said: “ Tbe law is settled that a holder coming fairly by a bill or note bas nothing to do with tbe transaction between the original parties,.unless, perhaps, in the single case, which is a bard one, but bas been determined, of a note for money won at play.”. Tbe ’question has since been considered no longer an open one in the
 
 *119
 
 English law, as to any.class of securities'within the category mentioned.
 

 What state of facts should be deemed inconsistent with the good faith required was not.settled' hy the earlier cases. In
 
 Lawson
 
 v. Weston,
 
 *
 
 .Lord Kenyon said: “ If there was any fraud in the transaction, or if a
 
 bond fide
 
 consideration had not been paid for the bill by the plaintiffs, to be sure they could not recover; but to adopt the principle of the defence to the lull extent stated, would be at once .to paralyze the circulation- of all the paper in the country, and with it all its commerce. The circumstance of the bill having been lost .might have b.een material, if they could bring knowledge of that fact' home, to the - plaintiffs.. The plaintiffs might or might not have seen the advertisement; and'it would be going- a great length to say that .a banker was bound to make inquiry concerning every bill brought to him to discount; it would apply as well to a bill for £10 as for .£10,000.” '
 

 In the later case of
 
 Gill
 
 v.
 
 Cubitt,
 

 †
 

 Abbott, Chief Justice, upon the trial, instructed .the jury, “ That there were two questions for their consideration: first, whether the plaintiff" had given value for the bill, of which there' could be no doubt;' and, secondly, whether he took it under circumstances which ought to have excited the suspicion of a prudent and careful man. If they thought he had taken the bill under such .circumstances, then, notwithstanding be had given the full value for it, they ought to find a verdict for the defendant/’ The jury found for the defendant, and a rule
 
 nisi
 
 for a new trial was granted. The question presented was fully argued. . The instruction given was unanimously approved by the court. The rule was discharged, and judgment was entered upon the verdict. This case clearly over-ruled the prior case of
 
 Lawson
 
 v.
 
 Weston,
 
 and it controlled a large series of later cases.
 

 In
 
 Crook
 
 v.
 
 Jadis,
 

 ‡
 

 the action was brought by the indorsee
 
 *120
 
 of a bill against tbe drawer. It was -held tbat it was “no defence that the plaintiff took the bill under circumstances which ought to have excited the suspicion of a prudent man that it had not been fairly obtained; the defendant must show that the plaintiff' was guilty of gross negligence;’1
 

 In
 
 Backhouse
 
 v.
 
 Harrison
 

 *
 

 the same doctrine was affirmed, and
 
 Gill
 
 v.
 
 Cubitt
 
 was earnestly assailed by one of the jhdges. Patterson, Justice, said: “ I have no hesitation in saying that the doctrine laid down in
 
 Gill
 
 v.
 
 Cubitt,
 
 and acted upon in other cases, that a party who takes a bill under circumstances which ought to have excited the suspicion of a pra-dent man cannot recover, has-, gone too far, and ought to be restricted. I can perfectly understand that a party who takes a bill fraudulently, or under such circumstances that he must know that the person offering ..it to him has no right to it, will acquire no title; but I never could understand that a • party who takes a bill
 
 bond fide,
 
 but under the circumstances mentioned in
 
 Gill
 
 v.
 
 Cubitt,
 
 does not acquire a property in it. Í think the fact found by the jury here that the plaintiff took the bills
 
 bond fide*
 
 but under circumstances that a reasonably cautious man would not have taken them, was no defence.”'1
 

 In
 
 Goodman
 
 v. Harvey,
 
 †
 
 the subject again came under con-, sideration. Lord'Denman, speaking for the court, held this1 language: “I believe we are all,of opinion that gross négli-gence only would not be a sufficient answer where the party has given a consideration for the bilk Gross negligence may be evidence of
 
 mala fides,
 
 but is not the same thing. We have shaken off' the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff, without any proof of bad faith in him, there is.no objection to his title.”
 

 A final blow was thus given to the doctrine of
 
 Gill
 
 v.
 
 Cubitt
 
 The rule established in this case has’ ever since obtained in the English courts, and may now be eonsidei’ed as fundamental in the commercial jurisprudence of that country.
 

 In this country there has been the same contrariety of.
 
 *121
 
 decisions as m the English courts, but there is a large and constantly increasing preponderance on the side of the rule laid down in
 
 Goodman
 
 v.
 
 Harvey.
 

 The question first came before this court in
 
 Swift v. Tyson.
 

 *
 

 Goodman
 
 v. Harvey, and the class of cases to which it belongs were followed..' The court assumed the proposition which they maintain, to he' too clear to require argument or authority to support it-' The ruling in that case was followed in
 
 Goodman
 
 v. Simonds,
 
 †
 
 and again in the
 
 Bank of Pittsburg v. Neal.
 

 ‡
 

 In
 
 Goodman v.
 
 Simonds, the subject was elaborately and exhaustively examined both .upon principle and authority. That case affirms the following propositions:
 

 The possession of such paper carries the title with it .to the holder: “ The possession and title are one and inseparable.”
 

 The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title .valid against all ¿the world:
 

 Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on -the part of the taker, at the time of the transfer, will not defeat lfis title. That result can be produced only by bad faith on his part.
 

 • The burden of proof lies on the person who assails the right claimed by the party in possession.
 

 Such is the settled law of this court, and we feel no disposition to depart from it. The rule may perhaps be said to resolve itself into a question'of honesty or dishonesty, for guilty knowledge and wilful ignorance alike involve the result of bad faith. They are the same in effect. "Where there is no fraud there han be no question. ■ The circumstances'mentioned, and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or. circumstantial evidence, is fatal to the title of the holder.
 

 The rule laid down in the class of cases of which
 
 Gill
 
 v.
 
 *122
 

 Cubitt
 
 is tbe antetype, is hard to comprehend and difficult to apply. ■ One innocent holder may be more or less suspicious under similar circumstances at one time than at another, and the same remark applies to prudent men. One'prudent man may also suspect where another would not, and the standard of the' jury inay be higher or lower than that of other 'men equally prudent in the management of their affairs; The rule established by the other line of decisions has the advantage of. greater clearness and directness. A ■careful judge may readily so submit a case under it to the jury that they can hardly fail to reach the right conclusion.
 

 We are well aware of the importance of. the principle involved in this inquiry. These securities, are found in the channels of commerce everywhere, and their volume is constantly'increasing. They represent a large part of the wealth of the commercial world. The interest of the community at large, in the subject is deep-rooted and wide-branching. ' It ramifies in every direction, and its fruits enter daily into the affairs of persons in all conditions of life. "While courts should be. careful not so to shape or apply the rule as to invite aggression . or give an easy triumph to fraud, they should not forget the considerations of equal importance which lie in the other direction. In
 
 Miller
 
 v.
 
 Race,
 
 Lord Mansfield placed his judgment mainly on the ground that there was no difference in principle between bank notes and money. In
 
 Grant
 
 v.
 
 Vaughan,
 
 he held that there was no •distinction between bank notes and any other commercial paper.. ’At that-early period his far-reaching sagacity saw the importance and the bearings of the subject.
 

 ■ The instruction under' consideration in the case before us is in conflict with the settled adjudications of this court.
 

 Judgment reversed, and the case remanded'for further proceedings in conformity to this opinion.
 

 *
 

 1st Burrow, 452.
 

 †
 

 3 Id. 1516.
 

 ‡
 

 2 Douglass, 633.
 

 *
 

 4 Espinasse, 56.
 

 †
 

 3 Barnewall & Cresswell, 466.
 

 ‡
 

 6 Barnewall & Adolphus, 909.
 

 *
 

 5 Barnewall & Adolphus, 1098.
 

 †
 

 4 Adolphus & Ellis, 870.
 

 *
 

 16 Peters, 1.
 

 †
 

 20 Howard, 343.
 

 ‡
 

 22 Id. 96.