## HOTCHKISS *v.* NATIONAL BANKS.

1. In May, 1863, the Milwaukee and St. Paul Railway Company issued coupon bonds, by each of which the company acknowledged its indebtedness to certain persons named, or bearer, in the sum of $1000, and promised to pay the amount to the bearer on the 1st day of January, 1893, at the office of the company in the city of New York, with semi-annual interest at the rate of seven per cent. per annum, on the presentation and surrender of the coupons annexed as they severally became due. Immediately following this acknowledgment of indebtedness and promise of payment, there was in each of the instruments a further agreement of the company to make what was termed "the scrip preferred stock," attached to the bond, full-paid stock at any time within ten days after any dividend should have been declared and become payable on such preferred stock, upon surrender, in the city of New York, of the bond and the unmatured interest warrants. To each of the bonds there was originally attached by a pin the certificate of scrip preferred stock thus referred to, which stated that the complainant was entitled to ten shares of the capital stock of the company, designated as "scrip preferred stock;" and that upon the surrender of the certificate and accompanying bond, and all unmatured coupons thereon, as provided in the agreement, he should be entitled to receive ten shares of full-paid preferred stock. Three of these bonds with certificates attached were stolen from the plaintiff, and were taken by the defendants as collateral security for notes discounted by them, without actual notice of any defect in the title of the holder; but the certificates were at the time detached from the bonds: *Held,* 1st, that the bonds were negotiable instruments notwithstanding the agreement respecting the scrip preferred stock contained in them, that agreement being independent of the pecuniary obligation of the company; and, 2d, that the absence of the certificates originally attached to the bonds, when the latter were taken by the defendants, was not of itself a circumstance sufficient to put the defendants upon inquiry as to the title of the holder.

2. The title of a person who takes negotiable paper before due for a valuable consideration can only be defeated by showing bad faith in him, which implies guilty knowledge or wilful ignorance of the facts impairing the title of the party from whom he received it; and the burden of proof lies on the assailant of the taker's title.

APPEAL from the Circuit Court for the Southern District of New York.

This was a suit to compel the defendants to surrender to the complainant three coupon bonds of the Milwaukee and St. Paul Railway Company, each for $1000, of which he

professed to be owner, and which he alleged were received by the defendants in bad faith, with notice of his rights. The instruments were dated May 6th, 1863; by each of them the company acknowledges its indebtedness to certain persons named, or bearer, in the sum designated, and promises to pay the amount to the bearer on the 1st of January, 1893, at the office of the company in the city of New York, with semi-annual interest at the rate of seven per cent. per annum, on the presentation and surrender of the coupons annexed as they severally become due, with a provision that in case of non-payment of interest for six months the whole principal of the bond shall become due and payable.

Immediately following this acknowledgment of the indebtedness of the company and its promise of payment, there was in each of these instruments a further agreement of the company to make what is termed "the scrip preferred stock," attached to the bond, full-paid stock at any time within ten days after any dividend shall have been declared and become payable on such preferred stock, upon surrender, in the city of New York, of the bond and the unmatured interest warrants.

The several instruments also stated that the bonds were parts of a series of bonds issued by the company, amounting to $2,200,000, and that upon the acquisition of certain other railroads the issue of bonds might be increased in certain designated amounts; that the bonds were executed and delivered in conformity with the laws of Wisconsin, the articles of association of the company, the vote of the stockholders, and resolution of the board of directors; and that the bearer of each bond was entitled to the security derived from a mortgage of the property and franchises of the company, executed to certain designated trustees, and to the benefits to be derived from a sinking fund, established by the mortgage, of all such sums of money as are received from the sales of lands granted to the company by the United States or by the State of Wisconsin.

To each of these bonds there was originally attached by a pin the certificate of scrip preferred stock which is referred

to in the body of the instrument.  This certificate was to the effect that the complainant was entitled to ten shares of the capital stock of the company, designated as "scrip preferred stock;" and that upon the surrender of the certificate and accompanying bond, and all unmatured coupons thereon, at any time within ten days after any dividends should have been declared and become payable on the full stock of the preferred stocks of the company, the complainant should be entitled to receive ten shares of such full-paid preferred stock, and that this scrip preferred stock was only transferable on the books of the company at their office in the city of New York, in person or by attorney, on the surrender of the certificate.

In November, 1868, these bonds, with coupons and certificates attached, belonged to the complainant, and during that month were stolen from a bank in Bridgeport, Connecticut, together with a large amount of other property there on deposit.  They were received in January and February, 1869, by the defendants, banking institutions in the city of New York, as collateral security for notes discounted by them, and were now held as such security for those notes, or new notes given in renewal of them, and they were received without actual notice of any defect in the holders' title.  At that time the certificates of scrip preferred stock, originally pinned to the bonds, were detached from them.

And the questions for determination were, whether the agreement in the instruments as to the scrip preferred stock affected their negotiability, and whether the absence of the certificates attached was a circumstance sufficient to put the banks upon inquiry as to the title of the holder.

*Mr. F. N. Bangs, for the appellant; Mr. J. S. Woodward, for the Tradesmen's National Bank, one of the appellees; and Mr. Henry N. Beach, for the National Shoe and Leather Bank of the City of New York, another.*

Mr. Justice FIELD, having stated the case, delivered the opinion of the court, as follows:

The character and form of the instruments which are the subject of controversy in the present suit, would seem to furnish an answer to the questions that are raised before us. The agreement respecting the scrip preferred stock is entirely independent of the pecuniary obligation contained in the instrument. The latter recites an indebtedness in a specific sum, and promises its unconditional payment to bearer at a specified time. It leaves nothing optional with the company. Standing by itself it has all the elements and essential qualities of a negotiable instrument. The special agreement as to the scrip preferred stock in no degree changes the duty of the company with respect either to the principal or interest stipulated. It confers a privilege upon the holder of the bond, upon its surrender and the surrender of the certificate attached, of obtaining full preferred stock. His interest in and right to the full discharge of the money obligation is in no way dependent upon the possession or exercise of this privilege.

Whether the privilege was of any value at the time the bonds were received by the defendants we are not informed, nor in determining the negotiability of the bonds is the value of the privilege a circumstance of any importance. Its value can in no way affect the negotiable character of the instrument. An agreement confessedly worthless, providing that upon the surrender of the bonds the holder should receive, instead of full paid-up stock in the railway company, stock in other companies of doubtful solvency, would have had the same effect upon the character of the instrument.

In *Hodges* v. *Shuler*,* which was decided by the Court of Appeals of New York, we have an adjudication upon a similar question. · There the action was brought upon a promissory note of the Rutland and Burlington Railway Company, by which the company promised, four years after date, to pay certain parties in Boston one thousand dollars, with interest thereon semi-annually, as per interest warrants

* 22 New York, 114.

attached, as the same became due; " or, upon the surrender of this note, together with the interest warrants not due, to the treasurer, at any time until six months of its maturity, he shall issue to the holders thereof ten shares in the capital stock in said company in exchange therefor, in which case interest shall be paid to the date to which a dividend of profits shall have been previously declared, the holder not being entitled to both interest and accruing profits during the same period."

It was contended that the instrument was not in terms or legal effect a negotiable promissory note, but a mere agreement, and that the indorsement of it operated only as a mere transfer, and not as an engagement to fulfil the contract of the company in case of its default. But the Court of Appeals held otherwise. "The possibility seems to have been contemplated," says the court, "that the owner of the note might, before its maturity, surrender it in exchange for stock, thus cancelling it and its money promise, but that promise was nevertheless absolute and unconditional, and was as lasting as the note itself. In no event could the holder require money and stock. It was only upon a surrender of the note that he was to receive stock, and the money payment did not mature until six months after the holder's right to exchange the note for stock had expired. We are of opinion that the instrument wants none of the essential requirements of a negotiable promissory note. It was an absolute and unconditional engagement to pay money on a fixed day, and although an election was given to the promisees, upon a surrender of the instrument six months before its maturity, to exchange it for stock, this did not alter its character or make the promise in the alternative in the sense in which that word is used in respect to promises to pay."

In *Welch* v. *Sage*,* the effect of the certificate attached to the bonds issued by the Milwaukee and St. Paul Railway Company, identical with those in this case, was considered

---

* 47 New York, 143.

by the same Court of Appeals, and the court there held that the certificate constituted no part of the bond; that the latter was entire and perfect without it, and that the admission of the debt and the promise to pay were in no degree qualified by it.

The absence of the certificates, at the time the bonds were received by the defendants, was not of itself a circumstance sufficient to put the defendants upon inquiry as to the title of the holder.    There is no evidence in the case, as already observed, that the privilege which the certificates conferred was of any value; and if it had value no obligation rested upon the holder to preserve the certificates.    He was at liberty to abandon the privilege they conferred and rely solely upon the absolute obligation of the company to pay the amount stipulated.    The absence of the certificates when the bonds were offered to the defendants amounted to little if anything more in legal effect than a statement by the holder that in his judgment they added nothing to the value of the bonds.    In the case of *Welch* v. *Sage*, already cited, it was held that the absence of the certificate from the bond when taken by the purchaser would not of itself establish the fact that the purchaser was guilty of fraud or bad faith, although it would be a circumstance of some weight in connection with other evidence.

The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world.    A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser.    That result can be produced only by bad faith, which implies guilty knowledge or wilful ignorance, and the burden of proof lies on the assailant of the title.    It was so expressly held by this court in *Murray* v. *Lardner*,\* where Mr. Justice Swayne examined the leading

---

\* 2 Wallace, 110; see also Goodman *v.* Simonds, 20 Howard 343.

authorities on the subject and gave the conclusion we have stated.

In the present case it is not pretended that the defendants, when they took the bonds in controversy, had notice of any circumstances outside of the instruments themselves, and the absence of the certificates referred to in them, to throw doubt upon the title of the holder.

We see no error in the rulings of the court below, and its judgment is, therefore,

AFFIRMED.