LELAND FAIRBANKS, JR., APPELLANT, *v.* WINTHROP SARGENT, AS EXECUTOR OF HENRY W. SARGENT, DECEASED, RESPONDENT.

*Agreement to receive a proportionate part of the recovery, in consideration of services to be rendered in collecting the amount — when it gives a lien on the recovery — the release of a debt and collateral security is a valuable consideration — when coupon bonds issued by a private person are to be treated as negotiable instruments.*

The plaintiff and one Underwood entered into an agreement whereby it was provided that for services to be rendered by the plaintiff in endeavoring to collect certain claims against one Zabriskie, he should have one-sixth of whatever amount of money, securities or property should be received on account of such claims as should be settled without suit, and one-third of whatever amount of money, securities or property should be collected or in any way realized or received on account of such claims as should be put in suit in this State or any other State or country.

In pursuance of a settlement made in an action brought in the State of New Jersey against Zabriskie, certain bonds were received under the direction of Underwood by the defendant's testator.

*Held,* that under the agreement the plaintiff had a lien upon the bonds so received, unless the testator was protected as a *bona fide* purchaser thereof in good faith.

*Williams* v. *Ingersoll* (89 N. Y,, 508) distinguished.

The bonds were sealed instruments, executed by one Sarah R. Haight, as executrix, payable to one Gray or bearer, having interest warrants attached to them for the payment of semi-annual instalments of interest, payment thereof being secured by a deed of trust or mortgage of certain leasehold property in

the city of New York. The testator upon receiving the bonds, and in consideration thereof, executed and delivered to Underwood, who was then indebted to him in an amount exceeding the value of the bonds, a release under seal for all claims, debts, dues and demands he had against him, and also discharged another claim which had been assigned to him by way of security. At the time he received the bonds the testator was not chargeable with notice of the plaintiff's interest in the bonds.

*Held,* that the testator was entitled to the protection afforded to *bona fide* purchasers in good faith of negotiable instruments.

That the fact that the bonds were issued by a private person under seal did not deprive them of their negotiable attributes.

The rule has now become settled that bonds of this description and issued in this manner, intended to pass from hand to hand, and containing appropriate words for the expression of that intention, are to be regarded as commercial paper.

APPEAL from a judgment of the Special Term dismissing the plaintiff's complaint, with costs.

The action was commenced and partly tried in the lifetime of defendant's testator, and was brought to recover one-third of forty coupon bonds under seal, for $500 each, executed by one Sarah R. Haight, sole acting executrix of the last will and testament of Richard K. Haight, deceased, to John A. C. Gray, or bearer, secured by a deed of trust or mortgage of certain leasehold property in the city of New York, together with one-third of any interest theretofore collected by defendant's testator; or, in case he had disposed of said bonds so as not to be able to transfer and deliver one-third of them, then to recover the value thereof and of the coupons, being $6,666.66, with interest thereon from June 15, 1872.

*A. C. Brown,* for the appellant.

*John Clinton Gray,* for the respondent.

DANIELS, J.:

The claim to enforce which the action was brought and prosecuted was for one-third of the value or amount of forty bonds of $500 each, delivered to the testator under the authority of Henry A. Underwood. The plaintiff had been employed to perform legal services for Underwood and the firm of which he had been a member; and an agreement was made between himself and the plaintiff on the 1st of July, 1869, by which it was agreed that for his

services in endeavoring to collect certain claims, including one against John I. Zabriskie, he should have one-sixth of whatever amount or money, securities or property should be received on account of such claims as should be settled without suit, and one-third of whatever amount of money, securities or property should be collected or in any way realized or received on account of such claims as should be put in suit, either in this State or any other State or country. The claim against Zabriskie was put in suit in the State of New Jersey. That was done by the employment of a legal firm there, through the agency of the plaintiff. While that action was pending which was for a large amount, a settlement of it was made by which the bonds which have been mentioned, were by the direction of Underwood delivered by Zabriskie to the testator, and the action was brought under the agreement to enforce the plaintiff's right to one-third of these bonds. It was held at the trial that the plaintiff had no lien upon the bonds themselves under the agreement which had been made by him with Underwood. But in this agreement it was agreed that the plaintiff should have for his services " one-sixth of whatever amount of money, securities or property shall be collected or in any way be realized or received, whether on settlement or without settlement on account of such claims as shall be put in suit." This language created more than an agreement by Underwood to pay or deliver the one-third to the plaintiff, and it excludes the case from that of *Williams* v. *Ingersoll* (89 N. Y., 508, 518). For the obligation upon which that action rested was no more than a promise to pay out of the money which should be recovered in any of the actions or proceedings. And that was held not to be an equitable assignment of any part of the demands in suit or of their proceeds. In *Wylie* v. *Coxe* (15 How. [U. S.], 415), the agreement was that the complainant should receive a contingent fee of five per centum out of the fund awarded, whether money or scrip. And it was said in the opinion by which the case was decided, that " this being the contract it constituted a lien upon the fund, whether it should be money or scrip. The fund was looked to and not the personal responsibility of the owner of the claim." (Id., 420.) And this rule was followed in *Trist* v. *Child* (21 Wall., 441, 447), where it was held that to constitute a lien or transfer of an interest in the fund, all that could be required was that " there

must be appropriation of the fund *pro tanto* either by giving an order, or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor." And this was likewise approved in *Stanton* v. *Embrey* (93 U. S., 548).

The agreement with the plaintiff was brought by its language within this rule, for it was not an agreement merely to pay, but it was an agreement that the plaintiff should have the stipulated one-third of the amount of money, securities or property collected realized or received. This language entitled him to this proportion of the identical proceeds of the litigation. Not by way of payment from Underwood, but by receiving to that extent the money, securities or property. And he was not deprived of this right by the further agreement between the parties that Underwood should determine who should be the attorney to bring the suit where an action might be brought, and had the right also to decide upon the terms and mode of settlement of each of the claims either before or after suit should be brought. For these additional stipulations in no way reduced the force of the preceding part of the agreement by which the plaintiff was entitled to one-third of the proceeds of the settlement for the services performed by him.

But a more serious difficulty arises out of the fact that the testator seems to be entitled to protection as a *bona fide* purchaser of the bonds in controversy. The settlement was brought about through the assistance of John A. C. Gray, whom the evidence showed and the court held was acting for Zabriskie, and not for the testator. Evidence was given to prove that Gray was informed before the settlement was completed that the plaintiff was entitled to share in the proceeds of the litigation. But that notice or information was without effect in the way of depriving the testator of protection, for the reason that Gray was neither employed by him nor acting under his authority. The testator had a large demand against Underwood, and as Zabriskie was desirous of settling the litigation, and Underwood by means of its proceeds could settle and extinguish the claim the testator had against him, the settlement was brought about to accomplish these objects.

In the negotiations which were carried on the testator was represented by ex-Judge Monell. He had a conversation with the plaintiff

concerning the claim against Zabriskie while it was in suit. But in that conversation the plaintiff failed to inform him that he was entitled to or claimed any part of the proceeds of the demand in suit against Zabriskie. He was informed by Monell that the latter was interested in knowing the condition and state of the Zabriskie claim. The plaintiff communicated that information, and by way of explanation in reply it was stated to him by Monell that a client of his had a claim against Underwood, and he wished to know the probability of getting the money out of the claims then in suit. An opportunity was afforded to the plaintiff in this interview to state the fact of his own interest in the proceeds of the litigation, but he failed to do that, and by reason of this failure as Monell was the only person who was acting for the testator, he omitted to affect the title to the bonds in the hands of the latter by notice, provided they are to be held to have been negotiable and the testator received them for a valuable consideration. That he did so receive them results from the fact that he had a larger demand against Underwood and a claim which had been assigned to him by way of security, in addition to this claim against Zabriskie; and in consideration of the bonds he executed and delivered to Underwood a release, under seal, for all claims, debts, dues and demands he had against him.

This was a complete surrender of the indebtedness by which Underwood was discharged from every vestige of liability. And it also discharged the demand or contract held by the testator as security. This demand may not have supplied him with a valuable security, and still it may very well have been of benefit and advantage to him if he continued to hold it. And the release of this collateral contract and of the whole indebtedness held by the testator against Underwood was, in contemplation of law, the surrender of value on the faith of the bonds, and entitled him to protection as a *bona fide* holder if they are to be held to have been negotiable securities. (*Brown* v. *Leavitt*, 31 N. Y., 113; *Pratt* v. *Coman*, 37 id., 440.)

These bonds were payable to bearer, having interest warrants attached to them for the payment of semi-annual installments of interest. And bonds in this form issued by corporations have been held to be negotiable securities, passing as bills and notes in like

manner to the purchaser by delivery for a valuable consideration. (*Brainerd* v. *N. Y. and H. R. R. Co.*, 25 N.Y., 496:) The reason on which this principle was placed was not the fact that the bonds were issued by a corporation, but it was that "when such obligations are issued to secure the payment of money upon time, and contain on their face an expression showing that they are expected to pass from one person to another, and thus to perform the office of bills and notes, or of money, as the words "bearer" or "assigns,' or "the holder" or the like, the courts in this country with a single exception, and those of this State without an exception, have concurred in attaching to them the attributes of commercial paper." (Id., 500.) And the same view was approved and acted upon by the court in *Murray* v. *Lardner* (2 Wall., 110).

In support of this appeal the counsel for the plaintiff has endeavored to avoid the effect of these authorities by a reference to others, in which it has been held that attaching a seal to a bill or note deprives it of its negotiable attributes under the law merchant. But since bonds in this form have entered so largely into the financial and business transactions of the country a more enlarged rule than that supposed previously to be applicable has been adopted for their disposition, and the protection of persons receiving them in good faith and for value. It is not necessary therefore, in disposing of this case, to examine those authorities in detail, for the rule has now become settled that bonds of this description and issued in this manner, intended to pass from hand to hand, containing appropriate words for the expression of that intention, are to be regarded as commercial paper. And as the testator received the bonds now in controversy in good faith, and for what the law regards as a valuable consideration and without notice of the plaintiff's rights, the plaintiff has no legal power to follow them either into his hands or in the hands of his executor.

On this ground the court was right in directing the dismissal of the complaint and the judgment should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.