### LOOMIS v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Second Circuit. May 24, 1900.)

#### No. 116.

RAILROADS—PREFERRED STOCK—AGREEMENT TO ACCEPT BONDS IN PAYMENT—PERFORMANCE.

Accompanying the bonds of a railroad company were a stipulation and certificate entitling the holder to a stated number of shares of the company's preferred stock at any time within 10 days after any dividend should be declared and become payable upon said stock, upon the surrender of such certificate, bonds, and unmatured coupons. *Held*, that such agreement did not entitle the bondholder to tender bonds in payment of preferred stock several months after their maturity, and after the railroad company had deposited money for the payment of the bonds at the place of payment designated therein.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 97 Fed. 755.

Howard Van Sinderen, for plaintiff in error.

Wheeler H. Peckham, for defendant in error.

Before LACOMBE, Circuit Judge, and THOMAS, District Judge.

THOMAS, District Judge. This action is for damages for refusal to accept bonds of the defendant in payment of its preferred stock, and the writ of error is to review a judgment entered upon a verdict in favor of the defendant by direction of the court. The charter of the defendant provides:

"Our capital stock shall not exceed, except as hereinafter provided, $4,200,-000, divided into 42,000 shares, which said shares shall be subdivided as follows: An amount not exceeding $3,450,000, or 34,500 shares, shall be set apart and designated as preferred stock; and the full amount of $100 per share we hereby declare and acknowledge to be paid thereon, except on so much of this class as is hereinafter designated as scrip preferred stock, and on this scrip stock we hereby declare and acknowledge the sum of one dollar per share to be paid. Of $3,450,000 preferred stock, an amount not exceeding $2,200,000 at par, or 22,000 shares, shall be set apart and designated as scrip preferred stock. The scrip preferred stock here named, or hereafter named, shall not at any time exceed the amount of outstanding mortgage bonds hereinafter named. The scrip preferred stock shall not be subject to any assessment, and shall entitle the holder in whose name it stands upon our books to all the rights and privileges of other stockholders, except that it shall not entitle the holder to any dividend or other profit or increase from the income

or assets of this company. It shall be issued in certificates of five and ten shares each, and shall accompany each mortgage bond of the company. The holder thereof shall have the right at any time within ten days after any dividend shall have been declared and become payable on the preferred stock to make the scrip preferred stock attached to his bond full-paid stock, upon the surrender to the company of the mortgage bond named by its number in his scrip certificate; and upon surrendering said scrip certificate and bond he shall be entitled to receive therefor the same number of shares of preferred full-paid stock, and entitled to dividends."

The defendant on July 1, 1867, issued bonds, severally, for the payment to certain persons named therein, or bearer, of $1,000 at the office or agency of the company, in the city of New York, on July 1, 1897, with interest thereon from the 1st day of July, 1867, at the rate of 7 per cent. per annum, payable semiannually at the company's office on the 1st day of every January and July, upon the presentation and surrender of the coupons annexed to the bond, as they should severally become due. Each bond contained the following stipulation:

"The obligors also agree to transfer to the bearer, at his option, ten shares, of $100 each, of its preferred stock, at any time within ten days after any dividend shall have been declared and become payable on said preferred stock, upon delivery to them, in the city of New York, of this bond and the unmatured coupons, and upon the transfer to the obligor of the ten shares of scrip stock accompanying this bond."

Certificates, each for 10 shares of the scrip preferred stock, accompanied the issue of each bond, and contained the following provision:

"Upon the surrender of this certificate and mortgage bond No. _____ of the company, and all unmatured coupons thereon, at any time within ten days after any dividends shall have been declared and become payable on the full-paid stock of the preferred stock of this company, the holder hereof is entitled to receive ten shares of said full-paid preferred stock."

For some 30 years before the trial the defendant paid dividends on its preferred stock, and for a number of years previous thereto the dividend days had been in April and October. On April 28, 1895, the plaintiff became the owner and holder of eight of such bonds, and the certificates for scrip preferred stock that should accompany the same. When the bonds became due on July 1, 1897, the defendant provided and thereafter maintained funds to pay the same at the place where they were payable. No presentation or demand for the payment of the bonds was made; but a dividend on the preferred stock having been declared and become payable on October 21, 1897, the plaintiff on October 22, 1897, presented his bonds and stock certificates at the office of the company, and demanded therefor full-paid preferred stock, which was refused. The preferred stock was then worth $140 per share. The question is whether the plaintiff was entitled to tender his bonds for preferred stock after the maturity of the bonds, or whether his right so to do expired when the duty of the defendant to pay the bonds accrued.

In Hotchkiss v. Bank, 21 Wall. 354, 22 L. Ed. 645, it appeared that three similar bonds, with certificates attached, were stolen from the holder; and the bonds, without the certificates, were accepted by defendants as collateral security for notes discounted by them, without notice of any defect in the title of the holder of the bonds, unless it

were the absence of such certificates. In its opinion the court declared that:

"The agreement respecting the scrip preferred stock is entirely independent of the pecuniary obligation contained in the instrument. The latter recites an indebtedness in a specific sum, and promises its unconditional payment to bearer at a specified time. It leaves nothing optional with the company. Standing by itself, it has all the elements and essential qualities of a negotiable instrument. The special agreement as to the scrip preferred stock in no degree changes the duty of the company with respect either to the principal or interest stipulated. It confers a privilege upon the holders of the bond, upon its surrender and the surrender of the certificate attached, of obtaining full preferred stock. His interest in the right to the full discharge of the money obligation is in no way dependent upon the possession or exercise of this privilege."

This decision is to the effect that the bond is complete without the certificate, and that the certificate confers a privilege, which may be exercised only by a holder of the bond. For the purpose of receiving full-paid preferred stock, the certificate must accompany the bond, inasmuch as the holder of the certificate may not receive the preferred stock without payment therefor, and the stipulation, in effect, is that only the bond may be tendered in such payment. The plan was to issue negotiable bonds, payable in any event at a named place, unless used by the holders to pay for the stock, and to deliver with them certificates of stock carrying a voting power, which should not participate in the profits until made full-paid, and that such full payments should be made only by the surrender of the bond and unmatured coupons. Here certain advantages were given bondholders: (1) To receive an instrument which provided for the absolute return of the principal, with a fixed interest, after 30 years; (2) to participate meanwhile in the management of the company, of which they were creditors; (3) to surrender the bonds, and thereby make the stock full-paid and entitled to participate in the profits. The plaintiff's interpretation of the contract is not permissible. The defendant undertook to pay the bonds, or to accept them in payment of stock. The plaintiff's theory measurably conjoins these alternative duties, and requires the defendant not only to have ready at the place of payment funds to meet the bonds at the date of their maturity, and to continue such provision, but also to be prepared to deliver the preferred stock upon demand, and preserve this dual preparation through the life of the bonds, unless the holder sooner exercised his option. But the defendant's agreement was to pay the bonds, or to accept them in payment of stock, and this agreement was satisfied if the defendant met the duty which first arose; and the duty to pay did in fact arise first, and demanded instant performance. Thereupon the defendant made performance by depositing the money at the place of payment at the time of payment, and by keeping the tender good. This did not discharge the debt, but it fulfilled the contract according to its terms; and no further act was demandable of the defendant, save that of making proof of performance in case of action against it, and of paying the money into court. It was acquitted of all damages and costs that flow from a breach of contract. But the plaintiff contends that, notwithstanding this discharge of the duty first accruing, the alternative

duty of accepting the bonds in payment of stock continued in full force 'and vigor. In such case, if the bonds were under seal, only the expiration of 20 years from their maturity could abate the plaintiff's rights, or relieve the defendant of all the burdens imposed by the contract. It would follow that during such time the defendant might be required to keep in readiness money to pay the bonds and stock to be given in exchange therefor, and meantime there would rest upon the corporate property the debt which it had gathered funds to discharge, which it was bound to discharge and had a right to discharge, and the use of its stock for the corporate purposes would be suspended while the holders of the scrip would continue their participation in the management of the corporation. A contract so unusual and inconvenient may not be presumed, and certainly there are no words that suggest that the parties contemplated a situation so incongruous. The defendant had done the act it promised to do, and such performance is inconsistent with the claim now presented by the plaintiff. This conclusion is easily reached without discussion of authorities, but a reference to Denney v. Railroad Co., 28 Ohio St. 108, and Chaffee v. Railroad Co., 146 Mass. 224, 16 N. E. 34, has not been overlooked. The judgment should be affirmed, with costs.