## YOUNG v. LOWRY.

(Circuit Court of Appeals, Third Circuit.   January 25, 1912.)

### No. 71 (1,549).

1. BILLS AND NOTES (§ 525*)—TRANSFER—BONA FIDE PURCHASER—EVIDENCE.
   Evidence *held* to require a finding that claimant had purchased certain notes of the bankrupt before maturity, for value, and without notice that they represented losses in stock gambling transactions.

   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1832–1839; Dec. Dig. § 525.*]

2. COURTS (§ 348*)—FEDERAL COURTS—PRACTICE—BURDEN OF PROOF.
   A person who takes negotiable paper before maturity and for value is entitled to recover as against the maker in the federal courts, unless it is shown that, in the transaction by which title was acquired, the indorsee had knowledge of facts which would render the same invalid as against the maker, or was guilty of bad faith, the burden of proving which is on the defendant.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 922; Dec. Dig. § 348.*]

3. COURTS (§ 348*)—PRACTICE IN FEDERAL COURTS—PRESUMPTION—BURDEN OF PROOF.
   The matter of presumption and burden of proof belongs to the law of evidence; and hence the federal courts must determine such questions by application of the federal rules, whether sitting in bankruptcy or administering the law of the state by reason of diverse citizenship, etc.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 922; Dec. Dig. § 348.*]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

In the matter of the estate of William T. Hill, Noble G. Hill, and Ellen Hill, individually and as copartners trading as William Hill & Sons. From a judgment affirming a referee's order refusing to allow the claim of Thomas W. Young as a creditor against the separate estate of Ellen Hill, for which Alfred Lowry was substituted trustee and filed objections, claimant appeals. Reversed. Claim allowed.

William W. Porter (Porter, Foulkrod & McCullagh, on the brief), for appellant.

John E. Sibble (George J. Edwards, Jr., on the brief), for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge.   This is an appeal from a judgment of the court below, affirming the order of a referee in bankruptcy, refusing to allow the claim of the appellant, as a creditor, filed against the

separate estate of Ellen Hill, one of the bankrupts, for whose estate the appellee is substituted trustee.

The firm of William H. Hill & Sons consisted of William J. Hill and Noble G. Hill, and their mother, Ellen Hill. Upon a voluntary petition, the said firm and the members thereof, individually, were adjudged bankrupts on June 8, 1908. The petition was signed and sworn to on May 27, 1908. The individual schedules showed that William J. Hill and Noble G. Hill had not sufficient assets to pay their individual debts. The assets of Ellen Hill were sold, and the proceeds of the sale amounted to about $17,000. For several years prior to 1907, Ellen Hill had given to her son-in-law, Robert S. Winsmore, who was connected with a brokerage firm in the city of New York, funds with which to deal in stocks on her account. It appears that these stocks were all, or most of them, bought on margin, from which profits were realized from time to time, which were again reinvested in the same way, but eventually this dealing resulted in large losses, of which Winsmore says he from time to time informed his mother-in-law, Mrs. Hill, and that she made to him from time to time her promissory notes for her share of such losses. About the middle of March, 1908, two or three months before the petition in bankruptcy was filed, the firm became embarrassed and efforts were made to obtain an extension from their creditors. While the firm was making efforts to obtain funds to enable it to continue business, William J. Hill was informed, he says for the first time, by his brother-in-law, Winsmore, that he held the notes of Mrs. Hill for something over $20,000, and that upon returning to his home in Philadelphia, he inquired of his mother about her dealings with Winsmore and was informed by her that she owed Winsmore $34,000, for which he held her notes. He then informed her that the affairs of the firm were in bad shape, and that, owing to her large indebtedness on these notes, he thought it would be useless to make further efforts to obtain an extension, and the voluntary proceedings in bankruptcy afterwards ensued. The notes of Mrs. Hill, held by Winsmore, were demand notes, and some time in April, 1908, Winsmore came to Philadelphia and learned something of the financial condition of the firm and then obtained from his mother-in-law three promissory notes, to take the place of the demand notes, each dated New York, May 5, 1908, payable at 30 Broad street, New York (Winsmore's place of business), for the aggregate sum of $34,000.

[1] Thomas W. Young, the creditor appellant, is a brother of Mrs. Hill, and was about 67 years old at the time he filed his proof of claim. He seems to have been on pleasant brotherly terms with his sister, and testifies that he thought she was fairly well to do after her husband's death, from her interest in the firm, although he had had no confidences from her in that respect and had asked her no questions concerning her affairs. He testified that he received a letter, dated May 15, 1908, while he was living in Washington, Pa., from Winsmore, Mrs. Hill's son-in-law, in which he, Winsmore, stated that he was the owner of three promissory notes made by Mrs. Hill, at 30, 60

and 90 days, aggregating $34,800; that he wished to dispose of them for cash or good securities that could be used as collateral, and saying,

"Do you desire to purchase them? If so, what would you give for them? I would sell them for a considerable discount and be willing to accept a small amount in cash and the balance in shares of the mining property in which I know you are interested."

Winsmore testifies that after he had learned on his visit to Philadelphia something of the financial embarrassment of the firm, he was willing to make a large discount in the sale of the notes, and that on that account he was careful to sell them without liability as an indorser. Upon receipt of this letter, Young testifies that he went to Philadelphia for the purpose of seeing his sister in reference to these notes. In his interview with her, he asked her if she had signed them and she replied that she had, but he did not ask her why she had given the notes, or anything in regard to the consideration therefor.

"All the conversation that I can remember that took place at that time was that I simply asked her if she had given these notes, if that was her signature, and she told me it was. I do not know of anything else that took place."

He says that afterwards he replied to Winsmore's letter, acknowledging its receipt and saying that he would give him $500 in cash and 11,000 shares of mining stock. This offer was accepted by Winsmore, and the transaction was closed. Though these stocks were not listed, and there was no testimony as to a market value, Young himself testified that the value of the stocks and cash given by him for the notes was $15,800. The stocks were mining stocks, and as such, in the sanguine belief of their owner, or of one who was willing to purchase them, might well be of great value. Such stocks are often bought—too often bought—on their speculative value, but a speculative value in such cases is not always an unreal value and is liable to turn any moment into a very substantial one. At all events, there is no testimony to contradict in any wise that of Young, that they had a value to him of the amount stated, and that he parted with stocks which he believed to be worth that much in the purchase of the notes. We cannot say that the consideration turned over to Winsmore for these notes was so utterly trifling as to bear upon its face the impress of fraud. If value is parted with in the purchase of negotiable paper, in good faith, and without notice of any infirmity therein, the title of the purchaser is not to be impugned by the mere fact that the value paid is disproportionate to the face value of the paper, provided that disproportion is not so great as, under the circumstances of the case, to raise the presumption of bad faith, and we are of opinion, after a careful examination of all the facts disclosed by the record, that such a disproportion does not exist in this case.

It having been affirmatively shown by the claimant, as holder of these notes, that he had parted with value for the same before maturity, we have carefully examined the record, in order to discover whether there is any sufficient evidence to show affirmatively and satisfactorily to the mind of the court that the claimant had knowledge, at the time he took these notes, of their alleged infirmity as be-

tween the maker and the payee. Young himself testifies fully in this regard, and denies that he had any such knowledge, or that he ever knew the nature of the transactions between his sister and her son-in-law, out of which the indebtedness represented by these notes grew. There is no direct evidence contradicting him in this statement, and we do not find any facts or circumstances which otherwise impeach his testimony. The mere fact that he consulted a lawyer in Washington, Pa., before going to Philadelphia to see his sister in regard to the notes, does not alone nor with the other facts in the case, as shown by the record, sustain the burden of proof imposed upon the assailant of his good faith in this respect.

[2] There was error, as we conceive it, in the position of the court below, that in accordance with the law of New York or of Pennsylvania, the burden of proof was placed upon Young to show that, though he had paid value for those notes before maturity, he had taken them without notice of the infirmity that attached to them. The learned judge said in his opinion:

"I shall assume that a holder in due course of a note given for a gambling debt may recover the full amount thereof against the maker, although there are some decisions to the contrary (Crawford, Negotiable Instruments Act [3d Ed.] pp. 71–74); but it seems clear that even where he may thus recover he must affirmatively prove that he holds in due course, as soon as it has been shown that the title of any person who has negotiated the instrument was defective. Therefore, since Winsmore's title was undoubtedly shown to be defective, either of these statutes expressly shifts the burden of proof to Young; and this is so plain that no argument is necessary. Bank v. Hoffman, 229 Pa. 432 [78 Atl. 1002]. See also Vosburgh v. Diefendorf (1890) 119 N. Y. 357 [23 N. E. 801, 16 Am. St. Rep. 836]; Bank v. Diefendorf (1890) 123 N. Y. 191 [25 N. E. 402, 10 L. R. A. 676]."

And the referee says:

"The conclusion is that the claimant has not proved that he is a holder of these notes, in good faith and for value and without notice of any defect in the title."

Neither the referee nor the District Judge was willing to find that actual bad faith on the part of Young, in purchasing these notes, had been satisfactorily established.

But this rule of evidence as to the burden of proof is not the rule that obtains in the federal courts. That rule is well set forth in the opinion of the Supreme Court, in King v. Doane, 139 U. S. 166, 173, 11 Sup. Ct. 465, 467 (35 L. Ed. 84). Mr. Justice Harlan, speaking for the court, says:

"Whether he did or did not give value, without such notice, is the vital question in the case. And that question must be considered with reference to the established rule, that if in an action by an indorsee against the maker a negotiable note is shown to have been obtained by fraud, the presumption, arising merely from the possession of the instrument, that the holder in good faith paid value is so far overcome that he cannot have judgment unless it appears affirmatively from all the evidence, whether produced by the one side or the other, that he, in fact, purchased for value. Smith v. Sac County, 11 Wall. 139, 148 [20 L. Ed. 102]; Commissioners v. Clark, 94 U. S. 278, 285 [24 L. Ed. 59]; Stewart v. Lansing, 104 U. S. 505, 509 [26 L. Ed. 866]; Pana v. Bowler, 107 U. S. 529, 542 [2 Sup. Ct. 704, 27 L. Ed. 424]. In the case supposed he must show that he paid value. That fact being established, he will be entitled to recover, unless it is proved that he

purchased with actual notice of defect in the title, **or in bad faith,** implying
guilty knowledge or willful ignorance. Goodman v. Simonds, 20 How. 343,
367 [15 L. Ed. 934]; Murray v. Lardner, 2 Wall. 110, 121 [17 L. Ed. 857];
Hotchkiss v. National Bank, 21 Wall. 354, 359 [22 L. Ed. 645]; New Orleans
v. Montgomery, 95 U. S. 18 [24 L. Ed. 346]; Swift v. Smith, 102 U. S. 442,
444 [26 L. Ed. 193]."

In Goodman v. Simonds, 20 How. 343, on page 366, 15 L. Ed. 934,
there is this language of the Supreme Court:

"But it is a very different matter when it is proposed to impeach the title
of a holder for value, by proof of any facts and circumstances outside of the
instrument itself. He is then to be affected, if at all, by what has occurred
between other parties, and he may well claim an exemption from any con-
sequences flowing from their acts, unless it be first shown that he had knowl-
edge of such facts and circumstances at the time the transfer was made.
Nothing less than proof of knowledge of such facts and circumstances can
meet the exigencies of such a defense; else the proposition as stated is not
true, that a party who acquires commercial paper in the usual course of
business, for value and without notice of any defect in the title, may hold
it free of all equities between the antecedent parties to the instrument."

Proof, and not merely suspicious facts, is required in order to im-
peach the title of the holder of negotiable paper, acquired for value
and before maturity.

In Swift v. Smith, 102 U. S. 442, 444, 26 L. Ed. 193, the Supreme
Court say:

"One who purchases such paper from another, who is apparently the own-
er, giving a consideration for it, obtains a good title, though he may know
facts and circumstances that cause him to suspect, or would cause one of
ordinary prudence to suspect, that the person from whom he obtained it
had no interest in it, or authority to use it for his own benefit, and though
by ordinary diligence he could have ascertained those facts. He can lose his
right only by actual notice or bad faith."

And in Hotchkiss v. National Bank, 21 Wall. 354, 359, 22 L. Ed.
645:

"The law is well settled that a party who takes negotiable paper before
due for a valuable consideration, without knowledge of any defect of title,
in good faith, can hold it against all the world. A suspicion that there
is a defect of title in the holder, or a knowledge of circumstances that might
excite such suspicion in the mind of a cautious person, or even gross neg-
ligence at the time, will not defeat the title of the purchaser. The result
can be produced only by bad faith, which implies guilty knowledge or will-
ful ignorance, and the burden of proof lies on the assailant of the title. It
was so expressly held by this court in Murray v. Lardner, 2 Wall. 110 [17
L. Ed. 857]. See also Goodman v. Simonds, 20 How. 343 [15 L. Ed. 934],
where Mr. Justice Swayne examined the leading authorities on the subject
and gave the conclusion we have stated."

This language is almost an exact repetition of the language used in
Murray v. Lardner, 2 Wall. 121, 17 L. Ed. 857, which is referred
to by Mr. Justice Field in the opinion we have just quoted. The rule
of evidence in the federal courts, to which we have just referred, is
well stated by the Circuit Court of Appeals for the Ninth Circuit, in
the case of First National Bank v. Moore, 148 Fed. 953, 78 C. C. A.
581, as follows:

"But in the federal courts, it may now be considered as the settled rule,
that a person who takes negotiable paper before maturity for value is en-

titled to recover as against the maker, unless it is shown that, in the transaction by which title was acquired, the indorsee had knowledge of facts which would render the same invalid as against the maker, or was guilty of bad faith, and the burden of proving such knowledge or bad faith lies on the defendant."

[3] This whole matter of presumption and burden of proof belongs to the law of evidence. It is the law of the forum and must govern even where a federal court by reason of diverse citizenship, is administering the law of a state, and not as here administering the rights of parties under the federal bankrupt law. It is therefore on the ground that the court below, as well as this court, is bound by the rules of evidence obtaining in federal courts, that we find the court below was in error in imposing upon Thomas W. Young, the claimant on these notes, the burden of affirmatively showing that he was without knowledge or notice of the infirmity attaching thereto at the time that he acquired them for value and before maturity. On the contrary, we hold that the burden was placed upon the trustee or creditors who assailed Young's title to the notes, to prove affirmatively and satisfactorily that he had notice at the time of his purchase of the infirmity that attached to the making of the notes.

For these reasons, we think the judgment of the court below should be reversed, and the claim of the appellant against the bankrupt estate should be allowed.