## Battles & Webster *versus* Laudenslager.

1. Where a party is the holder for value, before maturity, of negotiable paper the presumption is that he is bona fide holder without notice, and to affect him with knowledge of such fraud as will defeat a recovery, the evidence must be clear and sufficient to justify an inference of knowledge.

2. It was alleged, that the negotiable paper in controversy was obtained by fraud. *Held*, that it was erroneous to instruct the jury that the holders, who were purchasers for value, before maturity, ought not to recover if there was any evidence tending to show that they were connected with or had any knowledge of the original fraud.

3. Great latitude should be allowed in the admission of circumstantial evidence for the purpose of proving participation in manifest fraud, but when the testimony is before the court, it is their duty to see that it has at least a natural and reasonable tendency to sustain the allegation in support of which it is introduced; that it is of such a character as to warrant an inference of the fact to be proved, and amounts to something more than a mere basis for conjecture or vague speculation. If there is no sufficient evidence to justify an inference of the disputed fact, the court has the right and it is its duty to withhold it from the jury.

4. It is irrelevant to introduce evidence of the character of a party where his general reputation for honesty is in no way involved in the issue.

[Battles & Webster v. Laudenslager.]

June 5th 1877. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Lycoming county*: Of May Term 1877, No. 119.

Assumpsit by Battles & Webster, against George Laudenslager on the following promissory note:—

" $238.40.            Town of Jackson, county of Lycoming,
                    State of Penn'a, October 19th 1871.

Six months after date I promise to pay to the order of D. C. Sullivan two-hundred and thirty-eight and 40-100 dollars for value received, without defalcation or stay of execution.

Payable at my house.            GEORGE LAUDENSLAGER."
Endorsed, " D. C. SULLIVAN."

The plaintiffs were bankers doing business in Girard, Pennsylvania, and the defendant a farmer residing at the place named in the note.

At the trial before Gamble, P. J., the plaintiffs offered the note in evidence and rested.

Defendants then made the following offer:—

" To prove that on the 14th of October 1871, one D. C. Sullivan came to the house of the defendant in Jackson township, Lycoming county, and stated to defendant that he wished to insure his buildings from loss by fire, which might occur in any way, at a much lower rate of insurance than he could obtain from other companies; that he was agent for the Girard Electrical Insurance Company of Girard, Erie county, Pa.; that if defendant would insure in that company, he would put lightning-rods on his buildings at the cost of the company, and that the whole expense of insurance to the defendant would be the annual interest on the cost of the lightning-rods, as the said rods were put up by the fire insurance company for their own protection and not for the benefit of the insured; that said company never insured unless they put lightning-rods on the buildings, as more losses happened by lightning than by fire; that the defendant would never have to pay more than the interest on the cost of the lightning-rods for his insurance; and that at the end of a year, if the defendant did not find the company good, and all that he represented to be true, he, Sullivan, would come around and take off the rods free of charge; that Sullivan was accompanied by two men, and had a large wagon with the words 'Lightning-Rods' conspicuously painted thereon; that he and his men put the lightning-rods on the house and barns of the defendant; and Sullivan then brought a paper to defendant and requested him to sign it, stating that it was merely a memorandum that he would pay the interest upon cost of the lightning-rods, and that he (Sullivan) would give him a paper that would 'kill the

other;' and that Sullivan then handed to this defendant a paper, of which the following is a copy :—

" ' For value received, I, the undersigned, agent of the U. S. Lightning-Rod Co., agree to deliver unto Geo. Laudenslager a policy of insurance of Girard, Erie Co., Pa., in accordance with the conditions stipulated in application for insurance this day taken by me, within thirty days from date of application, the said Geo. Laudenslager having this day given his obligation for $238.40, which amount is in full for insurance and lightning-rods this day placed upon buildings. Town of Jackson, county of Lycoming, state of Pennsylvania, this 19th day of October 1871.

(Signed)            D. C. SULLIVAN, Agent.'

"(Endorsed) ' It is further agreed by the said George Laudenslager, that he will pay, or cause to be paid, six per cent. interest on the amount of the within stated obligation, after maturity, interest to be paid annually at the said George Laudenslager's house; and if he don't find the company perfectly good, just as represented in application, I will take rods and insurance off free of charge.

D. C. SULLIVAN.'

" That Sullivan then left, and a policy of insurance in the Girard Electrical Insurance Company of Girard, Erie county, Pa., was afterwards sent to defendant, insuring his barns against loss from fire by lightning only, and defendant neither saw nor heard from Sullivan again; but upon the 6th of September 1872, suit was brought against him upon the promissory note for $238.40, given in evidence by plaintiffs; that the signature to the note is in defendant's handwriting, but Sullivan never read such a note to him, but pretended to read only an agreement to pay interest upon the cost of the lightning-rods and defendant did not know that he had signed said note until he was sued thereon; that the whole consideration of said note has failed, and defendant's signature was obtained by the grossest fraud, and the lightning-rods are entirely worthless. Also, to prove that the plaintiffs are not bona fide holders for value of the said note, that Sullivan was formerly in the employment of Webster, one of the plaintiffs, in the lightning-rod business; that both of the plaintiffs resided at Girard, Erie county, Pa.; that neither of them had any acquaintance whatever with this defendant, never saw him nor heard of him, and he resided three hundred miles from the place of business of the plaintiffs.

" Further, that both of the plaintiffs were, at the time this fraud was perpetrated and the said note was given, directors in the Girard Electrical Insurance Co. of Erie county, Pa.; that the character of Sullivan in 1871–2 was bad for honesty and integrity, and this fact was well known to the plaintiffs; that he was totally insolvent during those years, and this fact the plaintiffs well knew; that

[Battles & Webster v. Laudenslager.]

the plaintiffs purchased at the same time a very large number of promissory notes of small amounts each, but amounting in the whole to $20,000, at a discount of 20 per cent. on each note; that all of these notes were purchased by plaintiffs from Sullivan, and this defendant's note was among the rest; that neither the note on which suit has been brought, nor the others, were protested at maturity; that the said note was payable at defendant's house in Jackson township, Lycoming county, but was never presented there for payment until after maturity—all this for the purpose of proving a scheme concocted by the plaintiffs and Sullivan to cheat and defraud defendant and to obtain his signature to said note, and also to show that plaintiffs are not bona fide holders for value, without notice and in the usual course of business, of the note on which suit was brought."

The plaintiffs objected to this offer, for the following, among other, reasons :—

1. Because the evidence proposed does not show such knowledge of the alleged fraud brought home to the plaintiffs as would constitute a defence to the note.

2. There is no issue involving the character of Sullivan, and evidence of his character or reputation is, therefore, irrelevant.

The court admitted the evidence, which was the first assignment of error.

It appeared from the evidence under this offer that Sullivan had practised a gross fraud upon Laudenslager in procuring the note; that he represented himself as the agent of the insurance company, located at Girard; that he took the insurance in that capacity, and thus consummated the fraud; that Laudenslager never made personal application for insurance, but it was made through Sullivan, and that the company ratified his agency by accepting the application and issuing a policy; that one of the parties plaintiff, Battles, was treasurer of this insurance company, and both were directors; that these plaintiffs, as bankers, had their office in the same building with the insurance company, a door opening from the one into the other; that, as bankers, they had taken $20,000 of similar notes to the one in suit; that these notes were not endorsed by one Crowell, to whom Sullivan alleged they belonged when he sold them to plaintiffs; that they had knowledge that Sullivan was irresponsible, one of the plaintiffs testifying that he knew Sullivan's reputation was bad, and that he was "tricky."

There was other evidence as to the character of Sullivan.

The plaintiffs submitted the following, among other points, to which are added the answers of the court :—

2. The entire evidence in the cause does not show the plaintiffs to have had notice of the fraud alleged to·have been practised by D. C. Sullivan, nor that they are holders mala fide, and the plaintiffs are therefore entitled to recover.

3 Norris—29

Answer. " Declined, leaving the question of *mala fides*, on the part of the plaintiffs, as a question of fact for the jury, under all the evidence."

4. That, under all the evidence in the cause, there is no question of fact raised to be submitted to the jury. They must, therefore, under the law, find for the plaintiffs.

Answer. " We decline to give you such instructions. We think there is evidence in the case proper to be submitted to you, and from that evidence it will become your duty to determine whether these parties are bona fide holders, innocent of all knowledge of this fraudulent transaction. If they are innocent holders, without any knowledge of this fraudulent transaction, then they hold this note free from the fraud committed by Sullivan. But if they are not, and you believe from the evidence in the cause that they had knowledge of that fraud, then we think they are not bona fide holders, and that they ought not to recover. We submit it to you upon that question of fact."

The answers to these points constituted the ninth and tenth assignments of error.

In their general charge, the court, *inter alia*, said : " If there is any evidence at all in the case tending to show that the plaintiffs were connected with the original fraud, or that they had any knowledge of the original fraud, then they ought not to be permitted to avail themselves of this principle of law and come in and say, 'Because this is a negotiable paper and we hold it, we have a right to recover.' "

This portion of the charge constituted the second assignment of error.

The verdict was for the defendant, and the plaintiffs took this writ, the assignments of error, *inter alia*, being those heretofore noted.

*Hill & McCormick*, for plaintiffs in error.—A holder for value without notice, can recover, though he received the note under circumstances calculated to arouse the suspicions of a prudent man and to destroy his title, it must be shown that he took the note *mala fide* : Phelan *v.* Moss, 17 P. F. Smith 59, and nothing but clear evidence of knowledge or *mala fides* can impeach his title : Moorehead *v.* Gilmore, 27 P. F. Smith 120. The character of Sullivan was not in issue and the evidence in regard thereto was inadmissible : Porter *v.* Seiler, 11 Harris 424.

*Henry C. Parsons* and *Henry W. Watson*, for defendant in error.—The facts were properly submitted to the jury. Great latitude in the admission of evidence is permissible where a note has been obtained by fraud : Brown *v.* Schock, 2 W. N. C. 151. In Phelan *v.* Moss, *supra*, the note was payable to bearer.

Here it was payable to order, and was endorsed and never protested.

Mr. Justice STERRETT delivered the opinion of the court, October 1st 1877.

It may be assumed that the signature of the defendant, as maker of the note in suit, was fraudulently obtained by the payee. This fact was clearly shown and has been impliedly found by the jury. The testimony was also clear and uncontradicted that the plaintiffs became the holders of the note for value before maturity. The only question of fact upon which the defence hinged, was whether they were bona fide holders, without notice of the fraud practised by Sullivan the payee. This question was submitted to the jury and passed upon by them adversely to the plaintiffs. The substance of their complaint is that there was no competent evidence to justify the court in submitting the question.

It is not claimed that either of the plaintiffs was present at the time the note was given, nor was there a particle of direct evidence that they had any knowledge of the fraudulent conduct of Sullivan. On the contrary Mr. Battles, who transacted the business for them, testified that they neither knew nor had reason to suspect it. For the purpose of affecting them with such knowledge the defendant relied entirely upon the facts and circumstances which he was permitted to prove under his first offer; and it was claimed that such a train of circumstances was established as justified the court in submitting the question to the jury, whether the plaintiffs purchased the note with knowledge of the fraud practised by Sullivan. Assuming the facts and circumstances to be true, are they, singly or collectively, sufficient to justify the inference sought to be drawn from them? We think not. They are entirely consistent with honesty and good faith on the part of the plaintiffs and their ignorance of Sullivan's fraudulent conduct. It may be said they are not inconsistent with their knowledge of the fraud, but that amounts to nothing unless they point in some degree to the conclusion sought to be established. We are unable to see that any natural inference or presumption of knowledge arises from them. If there is, it is so weak and inconclusive that it would be unsafe and improper to submit the question to the jury. At best it could be merely the subject of conjecture or speculation; and "mere speculative inferences are not allowable and cannot be regarded as evidence:" Goodman v. Simonds, 20 Howard 360. No doubt great latitude should be allowed in the admission of circumstantial evidence for the purpose of proving participation in manifest fraud, but when the testimony is before the court, it is their duty to see that it has at least a natural and reasonable tendency to sustain the allegations in support of which it is introduced, that it is of such a character as to warrant an inference of the fact to be proved, and

[Battles & Webster *v.* Laudenslager.]

amounts to something more than a mere basis for conjecture or vague speculation. If there is no sufficient evidence to justify an inference of the disputed fact, the court has the right and it is its duty to withhold it from the jury. "Evidence may be legally admissible as tending to prove a particular fact which yet by itself is utterly insufficient for the purpose. It may be a link in a chain but it cannot make a chain unless other links are added:" Howard Express Co. *v.* Wile, 14 P. F. Smith 201. So in England it is now settled that the preliminary question of law for the court is not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is evidence on which the jury can properly find the question for the party on whom the onus of proof lies, it should be submitted; if not, it should be withdrawn from the jury: Ryder *v.* Wombwell, Law Rep. 4 Exch. 39; Jewell *v.* Parr, 13 C. B. 916.

Again, in determining whether a question of fact should be submitted to the jury on the evidence presented, the character or degree of the proof required should also be taken into consideration. The plaintiffs in the present case, were the holders for value before maturity of negotiable paper. The presumption in their favor was that they were bona fide holders without notice, and, to affect them with knowledge of such fraud as would defeat a recovery, the evidence should be *clear:* Moorehead *v.* Gilmore, 27 P. F. Smith 122. In that case it is said that "the latest decisions, both in England and this country, have set strongly in favor of the principle that nothing but clear evidence of knowledge or notice, fraud or *mala fides* can impeach the prima facie title of a holder of negotiable paper taken before maturity. It is of the utmost importance to the commerce of the country that the principle should be sternly adhered to, however hard may be its operation in particular cases. To the same effect are Goodman *v.* Harvey, 4 Ad. & E. 870; Goodman *v.* Simonds, 20 How. 348; Phelan *v.* Moss, 17 P. F. Smith 59.

Considering the facts and circumstances, relied on by the defendant, either singly or collectively, we are of opinion that they were insufficient to justify the inference sought to be drawn from them, and that they utterly failed to furnish that degree of proof which was required to impeach the prima facie right of the plaintiffs, and should not have been submitted to the jury. The ninth and tenth assignments of error are therefore sustained.

In addition to the insufficiency of the testimony to justify an inference of the fact to be proved, part of it was objectionable on another ground. The character of Sullivan for honesty and integrity in 1871–2, was irrelevant, and could have no other tendency than to mislead or prejudice the jury. All that was done by him in procuring defendant's signature to the note, so far as it tended to

prove fraud, was relevant, but his general reputation for honesty was in no way involved in the issue.

The learned judge, in that part of his charge covered by the second assignment, fell into an error, in saying to the jury, that the plaintiffs ought not to recover "if there was any evidence tending to show that they were connected with or had any knowledge of the original fraud." This gave the jury an unwarrantable latitude. It by no means follows that any fact is to be accepted as true because evidence has been introduced tending to prove it. It frequently occurs that there is evidence, tending to prove certain facts, which often falls far short of establishing their truth.

There is nothing in any of the remaining assignments. that calls for special notice. If the testimony had been such as to justify the submission of the question of notice or knowledge of the fraud to the jury there would be no just ground of complaint.

Judgment reversed and a *venire facias de novo* awarded.