## REILLY v. McKINNON.

## RYNKIEVICZ v. SAME.

(Circuit Court of Appeals, Third Circuit. February 5, 1908.)

### Nos. 37, 38.

1. BILLS AND NOTES—ACTION ON NOTE—MISREPRESENTATION—EVIDENCE—SUFFICIENCY.

Evidence in an action on notes given to plaintiff's transferrer for corporate stock bought from the company's president's agent, defended on the ground of misrepresentation in the sale of the stock, *held* insufficient to show that plaintiff took the notes with knowledge of the illegal fraudulent representations, or with such notice of the facts and circumstances attending their execution that his acceptance must have been made in actual bad faith, though he was a director of the company and a member of the executive committee which placed the matter of the sale of the stock in the hands of the president.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ 1832–1839.]

2. SAME—BONA FIDE HOLDERS.

One may be a bona fide holder of commercial paper and entitled to protection as such though he knew of circumstances that might excite suspicion in the mind of a cautious person or though he were grossly negligent at the time of the transfer; the test is, did he act in bad faith?

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, § 818.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

See 145 Fed. 863.

George L. Crawford, for plaintiff in error.

C. E. Morgan, 3d, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. The above cases were tried together below by agreement of counsel, and a verdict in each case was directed for the plaintiff by the learned trial judge. From the judgments thereon entered, writs of error were duly taken to this court where the cases have been argued together. McKinnon was the plaintiff below in both actions, and the original defendants therein were John A. Reilly and Joseph Rynkievicz, but, during the pendency of the suit against Reilly, he died, and his executrix, Mary A. Reilly, was thereupon substituted as a defendant in his stead.

The facts in brief are as follows: Two promissory notes made by said Reilly and Rynkievicz, respectively, to the International Mercantile

Agency, in payment or part payment of shares of its stock, which the makers of the notes had bought through an agent of its president, were, before maturity, negotiated by the corporation as part of the collateral security for a loan of $30,000, made to it by McKinnon. McKinnon was a director of the corporation, not only then, but during substantially all the period of its existence, and also a member of its executive committee, which was composed of directors of the company and had power to act in their absence. At the time the notes in suit were made, McKinnon owned $50,000 in par value of the preferred stock of the company. He had previously owned $50,000 in par value of the common stock which he had received from McCauley, its president, and which he subsequently sold and applied the proceeds to the purchase of the preferred stock. The stock which the defendants bought was part of a subsequent issue of $1,000,000 par value, which had been authorized by the directors, and placed by the executive committee in the hands of McCauley for sale upon a commission of three-fourths of the net proceeds of sale, in excess of $50 per share; which amount per share was to be received by the company before any commissions were allowed or paid for the sale of the stock. The sale for which the notes were given appears to have been made by an agent of McCauley's at $125 per share. The defense to the notes is based upon fraudulent misrepresentations as to the assets and condition of the corporation alleged to have been made by the agent to the defendants at the time of the sale. Representations made at that time were testified to, but whether they were shown to be false by competent testimony is open to question. Many of the representations testified to may fairly be regarded as an exaggerated puffing of the stock and an exploitation of the probable future of the corporation. The representation more particularly relied upon, however, was to the effect that the company had at that time $500,000 in its treasury. An attempt to show that that statement was false was made by the production of what was claimed to be the cashbook of the company, which purported to show the monthly cash balances of the corporation at and about the time when the alleged misrepresentation was made. The proof identifying this cashbook as that of the corporation is uncertain. Beyond the fact that it purported to be such, and that it came directly from its trustee in bankruptcy, through an assistant district attorney of New York, there is no proof whatever of its genuineness; furthermore, there is no evidence to show by whom or how the book was kept, whether correctly or incorrectly, whether the entries were complete or incomplete, what the system of bookkeeping was, or whether or not there were any other cashbook or books of the company covering the same period of time. The learned trial judge only tentatively admitted the book in evidence, but we deem it unnecessary to pass upon the question of its admissibility, since the testimony does not show that the plaintiff was a party to or in any wise connected with or cognizant of either the above or any other of the alleged fraudulent misrepresentations. Considerable testimony was offered concerning the organization and early history of the corporation. It is somewhat difficult however, on account of its remoteness from the transactions in question, to perceive its relevancy,

but, from the argument of counsel for the plaintiffs in error, it may be gathered that it was intended to show thereby that the corporation was inherently weak, unstable, and in need of funds from its inception, and that a large proportion of its stock was issued for property which had been very greatly overvalued, of all of which the plaintiff was, or should have been, aware, and hence that he was, from the outset, engaged in a fraudulent conspiracy or combination. There is, indeed, sufficient evidence in the case to arouse suspicion, and engender serious doubts of the stability and ultimate success of the corporation, and we have no disposition whatever to justify much that was done during the organization and existence of this corporation. But that is not the vital question in the case. If these notes are void, they are void because they were obtained through fraud, not only, but fraud which has been satisfactorily brought home to the plaintiff. Bad faith on his part must appear. There is apparently no question that the plaintiff made the loan of $30,000 to the company, and accepted the notes now in suit, with other notes, as collateral security for the payment of the corporation's note to him for $30,000, and that the loan remains unpaid. The transaction just referred to was completed a few weeks before the bankruptcy of the corporation. There is not a word in the testimony, however, which, in our opinion, directly or indirectly connects the plaintiff with the fraudulent misrepresentations which were made to the defendants. That he was a director of the company and a member of the executive committee which placed the matter of the sale of the stock in the hands of the president is wholly insufficient for that purpose; those facts are entirely consistent, or at least are not inconsistent, with good faith on his part. Wakeman v. Dalley, Impleaded, etc., 51 N. Y. 27, 10 Am. Rep. 551; Richmond Railway Co. v. Dick, 52 Fed. 379, 3 C. C. A. 149. Furthermore, there is no evidence to show that he even knew the price at which the stock was sold to the plaintiffs in error. His own evidence is that he did not know, although he admits that he thought the notes, from their size, might have been given in payment for stock; manifestly however, such knowledge, if possessed, would not afford him any idea of the price at which the stock had been sold, since, so far as appears, he did not know how many shares either of the defendants had bought, or whether the notes they gave were given for the whole or a portion only of the purchase price, and without these factors it is manifest he could not even conjecture the price.

The corporation was organized to carry on a commercial agency of a character somewhat similar to those of Dunn and Bradstreet, and its first issue of stock was made to McCauley for the transfer of the assets and good will of other similar corporations, which, however, for the most part, had proved to be failures; such an enterprise was necessarily to some extent speculative, and of such a character that to insure its success considerable capital would naturally have to be advanced without any immediate prospect of remunerative return. At all events, the evidence does not conclusively show that the corporation was organized as a fraudulent concern, or for the purpose merely of making money by the sale of its stock. So far as appears, it may have been

honestly conceived, and under proper management might have had a reasonably prosperous career. Indeed, only a few months before its failure, a committee of the directors was appointed for the special purpose of investigating its affairs, which having been done, the committee made a flattering report of its prospects which was communicated to the plaintiff, in common with the other stockholders of the company. But, as already stated, whatever the character of the company may have been, there is no evidence of a fraudulent conspiracy or any evidence to show that the plaintiff took the notes in question with knowledge of the alleged fraudulent representations, or with such notice of the facts and circumstances attending their execution that his acceptance of them must be deemed to have been done in actual bad faith. He was ignorant of the entire transaction. One may be a bona fide holder of commercial paper and entitled to protection as such, notwithstanding he had knowledge of circumstances that might excite suspicion in the mind of a cautious person, or even though he were grossly negligent at the time of the transfer; the test is, did he act in bad faith? This is generally accepted law, and might be supported by a multitude of cases; reference, however, will be made to a few only. In Murray v. Lardner, 2 Wall. 110, at page 121, 17 L. Ed. 857, the Supreme Court says:

"Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part."

And again in Hotchkiss v. National Bank, 21 Wall. 354, 22 L. Ed. 645, the same court, at page 359 (22 L. Ed. 645), lays down the rule in the following language:

"The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or willful ignorance, and the burden of proof lies on the assailant of the title."

In Clark v. Evans et al., 66 Fed. 263, 13 C. C. A. 433, the Circuit Court of Appeals for the Eighth Circuit reversed the judgment of the court below because the trial judge charged the jury that "if you further believe that the plaintiff * * * had knowledge of such facts as would put a prudent man on inquiry, and that inquiry, if prosecuted, would have led to a knowledge of the fraud, then you will find for the defendant." In its opinion the Court of Appeals said:

"The charge was erroneous. 'Knowledge of such facts as would put a prudent man on inquiry' would not affect the right of the plaintiff to recover if she was otherwise a bona fide holder for value. One who purchases a negotiable note for value before maturity does not owe the maker the duty of making active inquiry into the origin or consideration of the note, before purchasing the same. His right to recover can only be defeated by showing that he had actual notice of the facts which impeach the validity of the paper. 'Knowledge of such facts as would put a prudent man on inquiry' will not suffice."

159 F.—6

In Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934, a charge to a jury very similar to the above was held to be erroneous, and the judgment below reversed on that ground. King v. Doane, 139 U. S. 166, 11 Sup. Ct. 465, 35 L. Ed. 84, and Battles et al. v. Laudenslager, 84 Pa. 446, are illuminative of the case at bar, as well as of the point under consideration. We think the trial judge was entirely warranted in directing, as he did, verdicts in favor of the plaintiff. Any other course would have been unwarranted.

The judgments below will be affirmed, with costs.