## WASHINGTON & CANONSBURG RY. CO. v. MURRAY.

(Circuit Court of Appeals, Third Circuit. January 23, 1914.)

No. 1773.

1. APPEAL AND ERROR (§ 1008*)—REVIEW—ACTION TRIED TO COURT—FINDINGS OF FACT.

Where an action in a federal court is tried by the judge, his findings of fact are conclusive in the appellate court unless there is no evidence to support them.

[Ed. 'Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3955–3960, 3962–3969; Dec. Dig. § 1008.*]

2. BILLS AND NOTES (§ 497*)—RIGHTS OF INDORSEE—BONA FIDE PURCHASER.

A purchaser of a negotiable note for value before maturity is entitled to recover thereon, unless it is shown that in the transaction by which it was obtained he had knowledge of facts which would render it invalid, or was chargeable with bad faith, and the burden of proving such defense rests on the defendant.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

3. BILLS AND NOTES (§ 367*)—RIGHTS OF INDORSEE—BONA FIDE PURCHASER.

A bank which purchased before maturity a note of a corporation payable to itself, executed and indorsed by its treasurer, held entitled to recover thereon, although a by-law of the corporation required all notes to be signed by both the president and treasurer, where such by-law was not known to the bank, and was never observed; the corporation having paid many notes signed by the treasurer alone without objection, and one of such notes having been previously purchased by the bank and indorsed by the president and vice president, who were also the principal stockholders of the corporation.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 947, 948; Dec. Dig. § 367.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Action at law by Charles C. Murray, receiver of the Cosmopolitan National Bank of Pittsburgh, against the Washington & Canonsburg Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of the trial court:

This is an action by the receiver of the Cosmopolitan National Bank against the Washington & Canonsburg Railway Company, upon a promissory note made by the defendant for the sum of $25,000 and is to recover the balance of $9,232.84, with interest thereon from March 15, 1909. A stipulation was filed, signed by counsel for both parties, waiving a trial by jury, and the evidence was taken before the court.

From the evidence in this case we find the following facts:

First. That Francis J. Torrance and Arthur Kennedy were the promoters of the Washington & Canonsburg Railway Company, a street railway corporation incorporated under the laws of the commonwealth of Pennsylvania, with the powers conferred upon street railway companies by the laws of the said commonwealth, and during the whole period of its existence, from the year 1901 to January, 1906, owned all of its capital stock, excepting that at some time during that period 100 shares of the capital stock were transferred by Arthur Kennedy to W. L. Merwin. During the period from 1901 to January, 1906, said Torrance was president; and said Kennedy was vice president of said company, and Torrance, Kennedy, and W. C. Hagan were directors thereof, and there was one other director who was an employé of the company, but not a stockholder. W. C. Hagan was secretary and treasurer of the company from the time of its organization until January, 1906.

Second. There are no minutes of meetings of the directors or stockholders of the Washington & Canonsburg Railway Company recorded in its minute book as being held between June 4, 1902, and January 8, 1906. It seems probable that the stockholders and directors held meetings, but such meetings as were held were informal. The financial management of the company was largely in the hands of Kennedy and Hagan.

Third. That at the time of the transactions in this case the by-laws of the plaintiff company provided that "no notes or drafts of the company shall be made or checks drawn except by the president and treasurer jointly, and only when authorized by the board of directors," and this by-law was never complied with, although promissory notes signed by the company to the number of probably more than 400 were executed from time to time, between 1901 and 1906, and W. C. Hagan, as treasurer of the company, executed practically all of these notes. About 227 of such notes, executed on behalf of the company in its name by W. C. Hagan, were produced at the trial by said Hagan and offered in evidence, the majority of these notes were indorsed by Torrance and Kennedy. It appears that 54 of these notes were made in 1903, 43 of them were made between January and April, 1904, 70 of them were made between April 6, 1904, and December 30, 1904; and 60 of them were made in 1905, and all of these notes appear to have been paid or renewed by the Washington & Canonsburg Railway Company. No director, officer, or stockholder of the company ever objected to the exercise of authority by Hagan, as treasurer, to execute and issue notes on behalf of this company, and it is evident that the officers, directors, and principal stockholders must have had knowledge of the exercise of such authority by Hagan as treasurer.

Fourth. About May 2, 1903, notes made by the following makers and regularly indorsed generally and thereby made payable to bearer were brought to the Cosmopolitan National Bank by W. C. Hagan for discount, viz.:

Note of W. C. Hagan (Exhibit 8—C) for $20,000.
Note of F. R. Nichols (Exhibit 8—D) for $20,000.
Note of Arden Land Company (Exhibit 8—E) for $20,000.
Note of Francis J. McManus (Exhibit 8—F) for $15,000.
Note of Francis J. Torrance (Exhibit 8—G) for $20,000.
Note of East Washington Street Railway Company (Exhibit 8—H) for $20,000.
Note of T. Lee Clark (Exhibit 8—I) for $20,000.
Note of Pennsylvania Development Company (Exhibit 8—J) for $20,000.
Note of Washington & Canonsburg Railway Company (Exhibit No. 8) for $10,000.

Of these notes Exhibit No. 8, made by the Washington & Canonsburg Railway Company for $10,000, was signed by "Washington & Canonsburg Railway Co., by W. C. Hagan, Secty. & Treas.," to the order of "Ourselves," and indorsed "Washington & Canonsburg Railway Co., by W. C. Hagan, Secty. & Treas.," and had thereon no other indorsement and was made for the accommodation of the Pennsylvania Development Company. These notes were made payable to the order of the makers thereof, respectively, on demand, and were duly indorsed by the makers without restriction, and some of the notes were also indorsed by Torrance, Kennedy, and Andrews, as will appear by reference thereto. These notes were then discounted by the Cosmopolitan National Bank prior to maturity, and the proceeds thereof were credited to an account then opened on the books of the bank under the name of "W. C. Hagan, Treas.," and thereafter other deposits were made, from time to time, in said account, and the proceeds of said notes were checked out, from time to time, by checks signed by W. C. Hagan, treasurer. At the time said notes were discounted, the cashier of the Cosmopolitan National Bank knew that Hagan was treasurer of the Washington & Canonsburg Railway Company.

Fifth. T. Lee Clark was treasurer of the Pennsylvania Development Company during the period covered by the transactions involved in this case. W. C. Hagan was treasurer of some other corporations besides the Washington & Canonsburg Railway Company. When the loans were made by the Cosmopolitan National Bank on May 2, 1903, referred to in the fourth finding, supra, and the proceeds were credited to the account of W. C. Hagan, treasurer, the Cosmopolitan National Bank had no knowledge or notice of any facts showing that the proceeds of the note of the Washington & Canonsburg Railway Company, which were credited to the account of W. C. Hagan, treasurer, were being misappropriated, in any manner, by Hagan, who was treasurer of said company.

Sixth. On or about August 1, 1905, the Cosmopolitan National Bank demanded that the notes aggregating $165,000, which had been discounted on May 2, 1903, should be paid, renewed, or better secured. Thereupon T. Lee Clark, who was known to the Cosmopolitan National Bank to be an officer of and interested in the Pennsylvania Development Company, procured W. C. Hagan, of the Washington & Canonsburg Railway Company to make and indorse a note for $25,000 of the Washington & Canonsburg Railway Company, in suit, Exhibit No. 6, all of the handwriting on said note, including the description of the collateral therein, being in the handwriting of the said W. C. Hagan, who then delivered said note to said T. Lee Clark as treasurer of the Pennsylvania Development Company, and the latter then took said note and other notes, viz., note of F. J. Torrance for $50,000; note of T. Lee Clark for $50,000, and note of Pennsylvania Development Company for $40,000 (all of which were regular on their face, and duly indorsed in blank without restriction) to the Cosmopolitan National Bank, and tendered the same in payment of the notes aggregating $165,000, referred to in the fourth finding, supra, which had been discounted by the said bank on May 2, 1903, and D. J. Richardson, acting on behalf of said bank as its cashier, accepted said notes in payment of the other notes above mentioned of like amount, and surrendered to said T. Lee Clark the notes so paid. The note of the Washington & Canonsburg Railway Company for $25,000, dated August 1, 1905, being Exhibit No. 6, and being the note sued on, was signed, "Washington & Canonsburg Railway Co., by W. C. Hagan, Treas.," to the order of "Ourselves" and indorsed, "Washington & Canonsburg Railway Co., by W. C. Hagan, Treas.," and was made for the accommodation of the Pennsylvania Development Company. That when Clark took the note in suit, Exhibit No. 6, to the bank, it recited certain collateral, but no collateral in fact accompanied it, and that at the time the exchange of notes was made at the bank, Clark and the cashier of the bank took 18 Columbia Plate Glass bonds, 10 Sante Fé Central Railway bonds, and 7 Philadelphia M. & M. Co. bonds, which were then pledged on the McManus note, and attached them to Exhibit No. 6, the note in suit.

Seventh. That at the time said exchange or substitution was made, the plaintiff made and entered in its individual ledger, crediting the proceeds of

the note, Exhibit No. 6, to the Washington & Canonsburg Railway Company, and at the same time entered a charge on said individual ledger account as if the proceeds of the same had been paid out, while in fact no money whatever passed, but the transaction was merely a substitution of the four notes in lieu of the ten theretofore held.

Eighth. That at the time T. Lee Clark made this exchange of paper there was, in the plaintiff bank, the note of the Washington & Canonsburg Railway Company, Exhibit No. 8, and that said note, together with the nine other notes above mentioned, had been discounted by the bank and the proceeds of all of them placed to the credit of W. C. Hagan, treasurer.

Ninth. That at the time the proceeds of said note were credited to the account of W. C. Hagan, treasurer, said W. C. Hagan was known to be treasurer of seven or eight companies, including the Washington & Canonsburg Railway Company, the Pennsylvania Development Company, and the Arden Land Company.

Tenth. That after the receipt by the plaintiff of the note, Exhibit No. 6, plaintiff bank rendered bills for interest every 30 days until the day it closed its doors in September, 1908, rendering the same first to the Pennsylvania Development Company and afterwards to F. J. Torrance. That the plaintiff bank never rendered a bill for interest to the Washington & Canonsburg Railway Company, and no interest was ever paid by that company.

Eleventh. That with the exception of the notes, Exhibit No. 8 and Exhibit No. 6, the Cosmopolitan National Bank had never discounted any paper for the Washington & Canonsburg Railway Company.

Twelfth. At the time the notes aggregating $165,000 acquired by the Cosmopolitan National Bank, the latter received from said T. Lee Clark a separate document, Exhibit No. 7, of which the following is a copy:

"Pittsburgh, Pa., August 1, 1905.

"Whereas the Cosmopolitan National Bank of Pittsburgh, Pennsylvania, has this day discounted the following collateral notes:

| | |
|---|---|
| Francis J. Torrance, | $50,000 |
| Pennsylvania Development Co., | 40,000 |
| Washington & Canonsburg Ry. Co., | 25,000 |
| T. Lee Clark | 50,000 |
| Contractor & Rys. Supply Co. | 35,000 |
| East Brady Gas Co. | 40,000 |

"And whereas the said Cosmopolitan National Bank has discounted two notes of W. S. Strickler, amounting to $15,000 jointly:

"Now, therefore, for value received we jointly and severally guarantee the payment of said notes and interest when due, at the times specified and according to the terms and conditions thereof.

"Witness our hands and seals this 1st day of August, A. D. 1905.

"Francis J. Torrance. [Seal.]
"T. Lee Clark. [Seal.]
"Arthur Kennedy. [Seal.]
"W. H. Andrews. [Seal.]

"W. C. Hagan, Witness to the Four Signatures."

Thirteenth. The cashier of the Cosmopolitan National Bank knew that the Washington & Canonsburg Railway Company had built or acquired and owned or operated a street railway, and that it had the power to make, issue, and negotiate notes in the regular course of its business, for its use and benefit, and also knew or understood that the Pennsylvania Development Company was in the business of constructing railroads, and that at the time said bank acquired the note of the Washington & Canonsburg Railway Company (Exhibit No. 6) it had no actual knowledge or notice that said note had been issued for an illegal and unauthorized purpose by said W. C. Hagan, treasurer, or that it had been made and issued by him for the accommodation of the Pennsylvania Development Company or of T. Lee Clark, or any of the per-

sons whose indebtedness to said bank was paid by T. Lee Clark in negotiating said note to said bank.

Fourteenth. The amount due on the note in suit is shown by the following statement, viz.:

| | | | |
|---|---|---|---|
| Amount of note | $25,000 | 00 | |
| Int. from July 1, 1908, to March 15, 1909 | 1,062 | 50 | |
| | | | $26,062 50 |
| Less credit of proceeds of two bonds of Columbia Plate Glass Company sold March 15, 1909 | $ 1,889 | 66 | |
| Also 16 of said bonds sold March 22, 1909 | 14,400 | 00 | |
| Also interest coupons collected from said bonds | 540 | 00 | |
| | | | 16,829 66 |
| Balance | | | $ 9,232 84 |

On which balance, interest is due from March 15, 1909, to date of judgment. We conclude as matter of law:

First. The evidence in this case does not prove that the said bank had any actual knowledge or notice of any infirmity in said note or defect in the title of T. Lee Clark, who was negotiating the same, or knowledge of such facts as made the act of said bank in taking the said instrument amount to bad faith.

Second. Plaintiff is entitled to judgment for the sum of $9,232.84, with interest from March 15, 1909.

### Discussion.

The evidence in this case shows conclusively that Francis J. Torrance and Arthur Kennedy were the promoters of the Washington & Canonsburg Railway Company, and that they owned all the stock of that company, except possibly 100 shares, and that they were promoters with T. Lee Clark and others, and large stockholders of the Arden Land Company, Pennsylvania Development Company, and other corporations, and these corporations were financed together by Torrance, Kennedy, Clark, and other officers and directors of other companies by the making of notes, procuring them to be discounted, and the proceeds thereof placed to the credit of W. C. Hagan, treasurer, and by him used, from time to time in the business of the different companies, the proceeds of the respective notes never being credited to the company making them, but put into a general fund known as W. C. Hagan, treasurer. Thus these companies were illegally managed together, and it is impossible to determine to what extent they accommodated each other, or how far the notes made by them were ultra vires as to the particular corporations. It was impossible in any particular case to say that the note was primarily an accommodation note, or whether it was to pay a note given for its accommodation, or how much of the proceeds indirectly came to it. No one could, by an inspection of the note, or even by inquiry, ascertain whether a given note was an accommodation note, and it would have required a careful, extended, and expert examination of the books of these different companies, of the officers and directors thereof, and of their private books to determine that fact, so generally and persistently were the affairs of the companies and these individuals commingled and confused with each other.

As to the two notes in question, Exhibit 6 and Exhibit 8, we have found that they were accommodation notes because W. C. Hagan, the officer who made them for the railway company, has so testified, but we doubt if outside of this evidence it could be shown, because of the manner of doing business, as we have above stated, that the Washington & Canonsburg Railway Company did not receive a consideration for them, either in money or other notes. This much as to the manner of doing business by this and its confederate companies. It shows a state of facts that, if inquired into by one about to discount any one of these notes, would not have resulted in any definite information as to whether or not the notes were accommodation notes. It must be conceded in this case that the by-laws of the Washington & Canonsburg

Railway Company provided that no notes or contracts of the company shall be made or checks drawn, except by the president and treasurer jointly, and only when authorized by the board of directors, and that the note in suit was made by the treasurer alone, and if there was nothing more, the note would not be binding upon the company. But there is a notable exception to this rule, and that is, that authority may be conferred upon an officer to make a note by a continued practice in violation of the by-law:. First National Bank v. Hotel Co., 226 Pa. 292, 75 Atl. 412; Case v. Bank, 100 U. S. 446, 25 L. Ed. 695. Between 300 and 400 notes were signed by Hagan as treasurer, beginning with the organization of the corporation in 1901, and continuing until January, 1906, when the entire stock of the railway company passed into other hands, and not only this, but the two persons, Torrance, the president, and Kennedy, the vice president, who owned all the stock except 100 shares, and were directors, indorsed, or guaranteed, or became surety upon, almost all of these notes thus signed by the treasurer, so that not only was there the continued practice of the treasurer in signing the notes, but there was the consent and the approval of the other officers, directors, and stockholders. Clearly, then, it is established that these notes do bind the corporation, unless the cashier of the Cosmopolitan National Bank had actual knowledge or notice that the note was for the accommodation of another, or knowledge of such facts that his action in taking the instrument amounted to bad faith. The negotiable instrument act of the commonwealth of Pennsylvania of the 16th of May, 1901, provides in section 56 that: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." P. L. 1901, p. 202. This act, as we understand it, was merely declaratory of what the law was, as decided by the federal courts, and by many of the courts of the states. Collins v. Gilbert, 94 U. S. 753, 24 L. Ed. 170.

In Hotchkiss v. National Bank, 21 Wall. 354, 359 (22 L. Ed. 645) Mr. Justice Field, in delivering the opinion of the court, said: "The law is well settled that a party who takes negotiable paper before due for a valuable consideration, without knowledge of any defect of title, in good faith, can hold it against all the world. A suspicion that there is a defect of title in the holder, or a knowledge of circumstances that might excite such suspicion in the mind of a cautious person, or even gross negligence at the time, will not defeat the title of the purchaser. That result can be produced only by bad faith, which implies guilty knowledge or willful ignorance, and the burden of proof lies on the assailant of the title. It was so expressly held by this court in Murray v. Lardner [2 Wall. 110, 17 L. Ed. 857], where Mr. Justice Swayne examined the leading authorities on the subject, and gave the conclusion we have stated."

In Murray v. Lardner, 2 Wall. 110, 121, 17 L. Ed. 857, Mr. Justice Swayne, in delivering the opinion of the court, said: "The possession of such paper carries the title with it to the holder. 'The possession and title are one and inseparable.' The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court, and we feel no disposition to depart from it. The rule may perhaps be said to resolve itself into a question of honesty or dishonesty, for guilty knowledge and willful ignorance alike involve the result of bad faith. They are the same in effect. Where there is no fraud there can be no question. The circumstances mentioned, and others of a kindred character, while inconclusive in themselves, are admissible in evidence, and fraud established, whether by direct or circumstantial evidence, is fatal to the title of the holder."

In Young v. Lowry, 192 Fed. 825, 829, 113 C. C. A. 149, 153 (Third Circuit), it is said by Judge Gray: "The rule of evidence in the federal courts, to which we have just referred, is well stated by the Circuit Court of Appeals for the Ninth Circuit, in the case of First National Bank v. Moore, 148 Fed. 953 [78 C. C. A. 581], as follows: 'But in the federal courts, it may now be considered as the settled rule that a person who takes negotiable paper before maturity for value is entitled to recover as against the maker, unless it is shown that, in the transaction by which title was acquired, the indorsee had knowledge of facts which would render the same invalid as against the maker, or was guilty of bad faith, and the burden of proving such knowledge or bad faith lies on the defendant.'"

In Swift v. Smith, 102 U. S. 442, 444, 26 L. Ed. 193, Mr. Justice Strong says: "There is nothing in the case to show that Smith's purchase was not in good faith. There was nothing upon the note, nor anything in the indorsement thereon, to notify him that it did not belong to Jackson, both legally and equitably. It was mercantile paper, and not due. One who purchases such paper from another, who is apparently the owner, giving a consideration for it, obtains a good title, though he may know facts and circumstances that cause him to suspect, or would cause one of ordinary prudence to suspect, that the person from whom he obtained it had no interest in it, or authority to use it for his own benefit, and though by ordinary diligence he could have ascertained those facts. Goodman v. Simonds, 20 How. 343 [15 L. Ed. 934]. He can lose his right only by actual notice or bad faith. It is true that if the bill or note be so marked on its face as to show that it belongs to some other person than the one who offers to negotiate it, the purchaser will be presumed to have knowledge of the true owner, and his purchase will not be held to be bona fide."

Let us test the case at bar by these decisions, remembering that the burden is on the defendant to prove either actual notice or knowledge, or knowledge of such facts as would make the bank's action in taking the note amount to bad faith, because the plaintiff made out his prima facie case by offering the note and proving the making of it.

The note in suit and the other notes making up the $165,000 were regular in form, indorsed by the payees, who were also the makers, and were not overdue, and were presented to the cashier of the bank by T. Lee Clark, and known to him as the treasurer of the Pennsylvania Development Company, a company engaged in constructing railroads. The original notes, to the amount of $165,000, discounted by the Cosmopolitan National Bank in May, 1903, were all the individual notes of stockholders and officers of the Pennsylvania Development Company, to the knowledge of the cashier, except the notes of Nichols and McManus, or were notes of corporations, the Arden Land Company, the East Washington Street Railway Company, or the Washington & Canonsburg Railway Company, which the cashier may well have supposed were indebted to the Pennsylvania Development Company. The cashier, with this knowledge in 1903, would not two years later, in August, 1905, when the notes of Torrance, Clark, the Pennsylvania Development Company, and the Washington & Canonsburg Railway Company, aggregating $165,000, were offered to him by Clark as treasurer of the Development Company, have any reason to believe that the $25,000 note of the Washington & Canonsburg Railway Company was an accommodation note. There was nothing in the note to arouse suspicion; much less was there sufficient to show any actual knowledge or notice of the defect in the paper. Nor was there in these facts, nor in any other evidence produced, sufficient to warrant a finding that the cashier had such knowledge as made it bad faith in him, as an officer of the bank, in accepting the note. The bank paid a consideration for the note in that it delivered up other notes of an equal amount. Altogether we are clearly of the opinion that the defendant has not sustained the burden of proof required of it. Judgment will be entered for the plaintiff for the amount of his claim.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for plaintiff in error. John S. Wendt, of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. [1] In the court below, the plaintiff, Murray, receiver of the Cosmopolitan National Bank, sued the Washington & Canonsburg Railway Company to recover on a note. By stipulation a jury was waived and the case tried by the judge. He found a verdict for the plaintiff for the balance due on such note. On entry of judgment thereon defendant sued out this writ. Where, as here, a case is tried by a judge, the findings of fact by a court are conclusive, unless there was no evidence to support them. Hathaway v. First Nat. Bank, 134 U. S. 494, 10 Sup. Ct. 608, 33 L. Ed. 1004. We have, however, carefully considered all the proofs in this case, and we see no reason to differ from the conclusions reached by the judge below in his full and careful opinion. The negotiable note in question was given by the defendant company to its own order and was indorsed by it. Its execution and indorsement was by Hagan, as treasurer of the company, which office, as well as that of secretary, he held. The bank received it before maturity, and therefor surrendered notes of other companies it then held. There being evidence tending to show the bank was a holder for value before maturity, the court's finding to that effect is conclusive.

[2] Such being the case the bank was, as held by this court in Young v. Lowry, 192 Fed. 825, 113 C. C. A. 149, entitled to recover, unless it was shown that in the transaction by which title was obtained, it had knowledge of facts which would render it invalid, or was guilty of bad faith, and the burden of proving such defense rests on defendant.

[3] In that regard it is alleged the note was invalid because it was signed by the treasurer of the defendant, that a by-law of that company provided that notes could only be executed under the joint signatures of the president and treasurer, and only when authorized by the board of directors, and that the note was an accommodation note for which defendant received no value. We are satisfied, however, that there was evidence before the court tending to warrant the finding the court made, namely:

"The evidence in this case does not prove that the said bank had any actual knowledge or notice of any infirmity in said note, or defect in the title of T. Lee Clark, who was negotiating the same, or knowledge of such facts as made the act of the bank in taking the said instrument amount to bad faith."

The by-law was not known to the bank; it was never acted on by the company; the bank had for two years held a note of the defendant signed in the same way; several hundred notes executed in the same way to third parties, and paid by the defendant, were given in evidence. Messrs. Kennedy and Torrance, who owned practically all of the stock of the defendant, and who were directors and president and vice president, respectively, of the company, indorsed this note, and at the same time executed a sealed guaranty thereof to the bank. The proof was that no meetings of the directors or stockholders were held; the whole operations of the company being directed by the two said

stockholders. Far from showing any knowledge by the bank of an infirmity in this paper we think that all the facts that were known by it were calculated to inspire confidence in the integrity of the note.

What we have said, we think, justifies our conclusion that the judgment should be affirmed, and avoids our entering into a protracted discussion of all the evidence.