HICKS v. SECOND NAT. BANK OF CINCINNATI, OHIO, et al.

In re HETZELL GELATINE PRODUCTS CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1915.)

No. 2742.

1. PRINCIPAL AND AGENT ⬅═14—EXISTENCE OF RELATION—CONTRACT.

Where a bankrupt refused to make a loan to a corporation on the securities of a real estate mortgage, but did make it to a director, taking as collateral security the note of the corporation to him, secured by its mortgage, the director was not the agent of the bank to record the mortgage, but his obligation to do so was purely contractual.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 26–33; Dec. Dig. ⬅═14.]

2. BANKRUPTCY ⬅═345—SECURED CLAIMS—WITHHOLDING FROM RECORD—NOTICE TO ASSIGNEE.

Where a bank loaned money to a corporate director, taking as collateral security a note given by the corporation to him, which stated that it was secured by first mortgage on real estate, and, though the mortgage and note were in regular form, there was a resolution by the directors authorizing the execution of the mortgage, which provided that it should not be recorded for 20 days, and an agreement with the directors that it should not be at all unless the corporation became financially involved, the bank was not put on inquiry which would have disclosed the existence of the fraudulent agreement not to record, so as to lose its priority after the bankruptcy of the corporation as against unsecured creditors who extended credit to the corporation between the dates of the execution and the recording of the mortgage.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. ⬅═345.]

3. MORTGAGES ⬅═175—RECORDING—NEGLIGENCE—EFFECT.

The negligent failure of a mortgagee to record his mortgage does not, in the absence of a statute or a showing of fraudulent intent, invalidate the mortgage as against subsequent creditors who have not obtained a specific lien on the property.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 417, 418; Dec. Dig. ⬅═175.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio, in Bankruptcy; Howard C. Hollister, Judge.

Bankruptcy proceedings against the Hetzell Gelatine Products Company. From a decree of the District Court allowing the Second National Bank of Cincinnati, Ohio, and another a preferred claim against the real estate of the bankrupt, W. A. Hicks, trustee in bankruptcy, appeals. Affirmed.

L. R. Hicks and W. A. Hicks, both of Cincinnati, Ohio, for appellant.

Ferdinand Jelke, Jr., and L. L. Forchheimer, both of Cincinnati, Ohio, for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

SESSIONS, District Judge. On January 7, 1913, a creditor's petition in bankruptcy was filed against the Hetzell Gelatine Products

Company, an Ohio corporation, and on January 28, 1913, the company was adjudged bankrupt. Later appellant was duly appointed trustee of the bankrupt estate. In February, 1912, the Hetzell Company was in need of funds, and through Joseph Glascock, one of its directors, applied to the Second National Bank of Cincinnati, Ohio, for a loan of $5,000 for one year to be secured by a mortgage on its real estate. The bank declined to make the loan directly to the company, but offered to loan the money to Glascock on his four-months note and to take as collateral the company's note for one year secured by the proposed mortgage. The bank's refusal and offer were reported by Glascock to the officers of the company, and thereupon its board of directors adopted a resolution accepting the offer and authorizing the making of the loan and the execution of the required note and mortgage, subject to an agreement that the mortgage was not to be recorded for 20 days after its date.

The trustee claims there was, then or later, a further oral understanding and agreement between Glascock and his codirectors that the mortgage should not be recorded at all unless the company became financially involved and the security thus jeopardized. The witnesses differ somewhat as to the reason why delay in the recording was desired. The bank had no dealings with any one representing the company except Glascock, and had no actual knowledge of the agreement or resolution that the mortgage should not be recorded at once. To effect the loan, Glascock gave to the bank his personal note for $5,000 payable in four months, and as collateral thereto delivered to the bank the company's note for the same amount, due in one year and payable to and indorsed by him, and also an assignment of the mortgage. Across the face of the collateral note was written in red ink the words, "Secured by First Mortgage on Real Estate." The bank credited Glascock's account with the proceeds of the note and certified his check to the company for the amount, less a commission amounting to a little more than $200, charged by him to the company. The mortgage to Glascock was executed forthwith by the company and delivered to and retained by him. The mortgage remained in his possession, without demand therefor or inquiry by the bank, until the afternoon of September 6, 1912, when he placed it on record. He claims to have forgotten the mortgage until that time in the stress of his own financial troubles and difficulties and to have found it while looking over other papers. On the other hand, the trustee claims that during the morning of September 6th Glascock was notified of the imminence of the failure of the company and that he immediately caused the mortgage to be recorded pursuant to his agreement with the other directors.

Be this as it may, 11 days later a receiver was appointed for the company by a state court. Between February 14, 1912, when the mortgage was given, and September 6, 1912, when it was recorded, the company bought material on credit in the regular course for the conduct of its business to the amount of about $6,000. The indebtedness so contracted has not been paid. However, during that time and up to the commencement of the bankruptcy proceedings, four months and one day later, no creditor secured or obtained any lien upon the mort-

gaged property through legal proceedings or otherwise. By order of the referee, made pursuant to an agreement of the parties, the mortgaged property has been sold free from liens and all rights transferred to the proceeds of the sale. The issue thus presented is narrow, and relates solely to the right of priority in and to the proceeds of the sale of the real estate covered by the mortgage as between the trustee, representing general unsecured creditors of the bankrupt mortgagor, on the one side, and the bank, as assignee and owner of the mortgage, on the other. The referee held the mortgage valid and entitled to priority of payment from the proceeds of the sale of the land. The District Court affirmed the referee's decision, and the case is brought here by appeal.

Appellant concedes that, in the first instance, the bank took the mortgage for value and free from all equities and defenses which the company might have had against Glascock; that, inasmuch as the mortgage was for a present consideration and more than four months elapsed between the date of its recording and the time of filing the petition in bankruptcy, the transaction was not a voidable preference within the purview of the Bankruptcy Act; and that, in the absence, as here, of either active fraud or bad faith, no Ohio statute exists which gives general creditors without a lien rights of preference or priority in and to mortgaged property over those of the owner of an unrecorded mortgage upon the same property.

[1] Assuming that the mortgage was withheld from record by Glascock pursuant to agreement with his codirectors and for the purpose of enabling the company to obtain credit to which it was not entitled, and further assuming, but not deciding, that he, as mortgagee, could not enforce the mortgage against creditors of the mortgagor whose claims arose and accrued during the time when the instrument was kept from record, does it follow that the bank, which is conceded to have been an innocent purchaser for full value, is in the same predicament, and is likewise precluded from asserting its apparent rights? The contention of the trustee in bankruptcy comes at last to the asserted proposition that his claim upon the proceeds of the sale of the mortgaged property is better than that of the bank because the mere passive negligence of the latter made it possible for Glascock to keep the mortgage from record and thus to defraud those extending credit to the mortgagor, or because, under the circumstances, and by reason of the relations between them, the bank must be presumed to have known of Glascock's alleged fraudulent purpose and is bound by his acts. That Glascock was not the agent of the bank is clear. It made the loan directly to him. It dealt and treated with him at arm's length and as an officer and agent of the company. His duty to record the mortgage was purely contractual, and the whole trouble has arisen from the breach of his agreement.

[2] Neither can it be said that the bank had notice of such facts, or was so put upon inquiry as to make it responsible for the fraudulent acts and purposes, if any, of Glascock and his fellow directors. To sustain the contention of appellant in this regard would require the building of inference upon inference without a sufficient founda-

tion of fact. In substance the argument is this: The collateral note which was delivered to the bank referred to the mortgage which it was agreed should be given to secure its payment; the mortgage recited that it was made pursuant to authority conferred by the resolution of the mortgagor's board of directors; the resolution authorized the execution and delivery of the mortgage upon the condition or agreement that it should not be recorded for 20 days after its date; a further oral agreement was made that the mortgage was not to be recorded at all unless the mortgagor became financially involved; these agreements to withhold the mortgage from record were fraudulent as to subsequent creditors without notice; the writing across the face of the note bound the bank to a knowledge of the contents of the mortgage; the recital in the mortgage called for an examination of the resolution; a perusal of the resolution would have put the bank upon inquiry as to the purpose of the agreement therein contained; diligent inquiry would probably have revealed the existence of the additional oral agreement; therefore, in law, if not in fact, the bank had notice and knowledge of the fraudulent intent and purpose of the officers of the company and the rights which it otherwise would have had are barred by their acts. To state the argument so made is to demonstrate its fallacy. The collateral note and mortgage were couched and drawn in the usual and ordinary language and terms of such instruments. They contain no reference to any plan or agreement not to record the mortgage. Neither common prudence, caution, or custom, nor any rule of law, required the bank to look outside of and beyond these instruments, and to examine the records of the mortgagor company, and to make inquiries suggested by those records. Hotchkiss v. National Bank, 21 Wall. 354, 359, 22 L. Ed. 645; Union National Bank v. Neill, 149 Fed. 711, 714, 79 C. C. A. 417, 10 L. R. A. (N. S.) 426; Washington & Cannonsburg Ry. Co. v. Murray, 211 Fed. 440, 447, 128 C. C. A. 112; Young v. Lowry, 192 Fed. 825, 113 C. C. A. 149; Reilly v. McKinnon, 159 Fed. 78, 86 C. C. A. 268; Perris Irrigation District v. Thompson, 116 Fed. 832, 837, 54 C. C. A. 336; In re Hopper-Morgan Co. (D. C.) 156 Fed. 525, 530.

[3] The bank is charged with negligence, and not with fraud, in permitting the mortgage to be withheld from record. Negligence necessarily implies a lack of purpose. In the absence of statutory provision and fraudulent intent, the negligent or inadvertent failure to record a deed or mortgage does not make the conveyance invalid as to subsequent creditors who have not obtained a specific lien or hold upon the mortgaged premises. In 20 Cyc. 447, the rule is thus stated:

"Where it is either found that all the acts of the parties were done honestly and in good faith, or it is not found that they were dishonest or fraudulent, a deed or mortgage cannot be adjudged fraudulent and void solely on the ground that it was not recorded, and that in ignorance of the existence of the instrument assailed credit was given to the grantor upon the faith of his supposed ownership of the property."

Again, in 27 Cyc. 1157, it is said:

"The failure to record the mortgage does not render it invalid as to general creditors of the mortgagor or creditors who have not acquired a specific lien upon or interest in the property, unless they can impeach it for fraud."

This doctrine has been uniformly sustained by the decisions of both the Ohio and the federal courts. Stewart v. Hopkins, 30 Ohio St. 502; Bercaw v. Cockerill, 20 Ohio St. 163; Dow v. Bank, 87 Ohio St. 173, 100 N. E. 328; Holt v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756; In re Shirley, 112 Fed. 301, 50 C. C. A. 252; In re Klein, 197 Fed. 241, 247, 248, 116 C. C. A. 603; Carey v. Donohue, 209 Fed. 328, at 335, 126 C. C. A. 254; In re Watson (D. C.) 201 Fed. 962; In re Charles Town Light and Power Co. (D. C.) 199 Fed. 846.

The decree of the District Court is affirmed, with costs to appellees.